No. 25-2735

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

F.F. *et al*,
Plaintiffs – Appellants,

      v.

VALLEY VIEW COMMUNITY
UNIT SCHOOL DISTRICT 365U, et al,
Defendants – Appellees.

Appeal from the United States District Court
For the Northern District of Illinois, Eastern Division,
Case No. 1:25-cv-09112
The Honorable Judge Sharon Johnson Coleman

## RESPONSE BRIEF OF DEFENDANTS-APPELLEES

Darcy Proctor
John O'Driscoll
Alexander Myers
TRESSLER LLP
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606
312-627-4000
dproctor@tresslerllp.com
jodriscoll@tresslerllp.com
amyers@tresslerllp.com
*Counsel for Defendant-Appellee*

<u>**DISCLOSURE STATEMENT**</u>

Appellate Court Number: 25-2735

Short Caption: F.F. et al v. Valley View Community Unit School District 365U, *et al.*

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information:

(1)     The full name of every party that the attorney represents in the case:

Valley View Community Unit School District 365U, Jason Pascavage, Keith Woods.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Tressler LLP

(3)     If the party or amicus is a corporation

(i)     Identify all its parent corporations, if any; and

(ii)     List any publicly held company that owns 10% or more of the party's or amicus' stock.

N/A

---

Attorney Signature:          /s/ *Darcy Proctor*   Date: December 5, 2025
Attorney's Printed Name:          Darcy Proctor

Are you *Counsel of Record* for the above listed parties pursuant to Cir. Rule 3(d)? Yes.

| Address: | 233 S. Wacker Drive, 61st Floor | 550 E. Boughton Road, Suite 250 |
| --- | --- | --- |
| | Chicago, IL 60606 | Bolingbrook, Illinois 60440 |
| Telephone: | (312) 627-4010 | Facsimile: (312) 627-1717 |

E-Mail Address: dproctor@tresslerllp.com

## DISCLOSURE STATEMENT

Appellate Court Number: 25-2735

Short Caption: F.F. et al v. Valley View Community Unit School District 365U, *et al.*

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information:

(1)     The full name of every party that the attorney represents in the case:

Valley View Community Unit School District 365U, Jason Pascavage, Keith Woods.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Tressler LLP

(3)     If the party or amicus is a corporation

(i)     Identify all its parent corporations, if any; and

(ii)    List any publicly held company that owns 10% or more of the party's or amicus' stock.

N/A

---

Attorney Signature:            */s/ John M. O'Driscoll*   Date: December 5, 2025
Attorney's Printed Name:       John M. O'Driscoll

Are you *Counsel of Record* for the above listed parties pursuant to Cir. Rule 3(d)? Yes.

Address:      233 S. Wacker Drive, 61st Floor      550 E. Boughton Road, Suite 250
              Chicago, IL 60606                     Bolingbrook, Illinois 60440
Telephone:    (630) 343-5209                        Facsimile: (312) 627-1717


E-Mail Address: jodriscoll@tresslerllp.com

# DISCLOSURE STATEMENT

Appellate Court Number: 25-2735

Short Caption: F.F. et al v. Valley View Community Unit School District 365U, *et al.*

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information:

(1)     The full name of every party that the attorney represents in the case:

Valley View Community Unit School District 365U, Jason Pascavage, Keith Woods.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Tressler LLP

(3)     If the party or amicus is a corporation

(i)     Identify all its parent corporations, if any; and

(ii)     List any publicly held company that owns 10% or more of the party's or amicus' stock.

N/A

---

Attorney Signature:                    */s/ Alexander Myers*  Date: December 5, 2025
Attorney's Printed Name:          Alexander Myers

Are you *Counsel of Record* for the above listed parties pursuant to Cir. Rule 3(d)? Yes.

Address:     233 S. Wacker Drive, 61st Floor     550 E. Boughton Road, Suite 250
                    Chicago, IL 60606                         Bolingbrook, Illinois 60440
Telephone:  (312) 627-4017                         Facsimile: (312) 627-1717


E-Mail Address: amyers@tresslerllp.com

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................... i-iii

TABLE OF CONTENTS ............................................................................. iv

TABLE OF AUTHORITIES ......................................................................... v

JURISDICTIONAL STATEMENT ............................................................... 1

STATEMENT OF THE ISSUES .................................................................... 1

STATEMENT OF THE CASE ....................................................................... 1

   I.   Factual Background ........................................................................... 1

   II.    Procedural Background ................................................................... 3

SUMMARY OF ARGUMENT ....................................................................... 5

ARGUMENT ................................................................................................. 9

   I.   The District Court properly found that Plaintiff is unlikely to succeed on the merits of her complaint because she fails to show that there has been any discrimination on the basis of sex. ............................................................ 9

      a.   The Valley View School District bathroom access policy does not discriminate on the basis of sex. ........................................................... 10

      b.   Plaintiff's privacy concerns do not bolster her equal protection and Title IX claims as bathrooms are not inherently private places under the law. .............. 14

      c.   Plaintiff's demand for objective criteria to prove gender identity was inconsequential to the District Court's decision, is unconstitutional under current case law, and would be unenforceable as policy. .................................... 17

      d.   Plaintiff's concerns over the actual transgender status of the student in question has no bearing over this case. ............................................... 19

   II.   The District Court correctly found that Plaintiff cannot show a likelihood of irreparable harm due to the nature of Plaintiff's alleged harm. ............................ 22

      a.   Plaintiff's alleged harm is distinguishable from the harms alleged in similar cases. ....................................................................................... 22

      b.   The School has taken multiple steps to address Plaintiff's privacy concerns. ........................................................................................... 24

      c.   The record indicates that the underlying incident only ever occurred once, which is insufficient to show that irreparable harm is occurring. ....................... 26

   III.   The District Court correctly found that Plaintiff cannot show that she lacks adequate remedies at law to compensate her alleged harms. ................................ 27

    a.    Plaintiff's alleged harms are monetarily compensable and are incomparable to the extensive medical harm proven in other cases. .......................................... 28

    b.    The extensive precautions taken by the District sufficiently protect Plaintiff's privacy concerns. ................................................................. 29

IV.    The District Court did not abuse its discretion when it balanced the equities in the Defendants' favor. .......................................................... 32

CONCLUSION................................................................................................ 35

# TABLE OF AUTHORITIES

## Cases

*A.C. by M.C. v. Metropolitan School District of Martinsville*,

    601 F. Supp. 3d 345 (S.D. Ind. 2022) ...............................................21,23,25

*A.C. by M.C. v. Metropolitan School District of Martinsville*,

    75 F. 4th 760 (7th Cit. 2023) ........................9,11,14-19,21,23-25,28,30,31,33

*Cassell v. Snyders*,

    990 F.3d 539 (7th Cir. 2021)...................................................................7

*City of Cleburne v. Cleburne Living Ctr.*,

    473 U.S. 432 (1985) .............................................................................10

*C.Y. Wholesale, Inc. v. Holcomb*

    965 F.3d 541 (7th Cir. 2020)...............................................................8,20

*Faras v. Citizens Bank & Tr. Of Chi.*

    433 F. 3d 558 (7th Cir. 2006)...............................................................29

*Finch v. Treto*,

    82 F.4th 572 (7th Cir. 2023)................................................................7,8

*Foodcomm Int'l v. Barry*,

    328 F.3d 300 (7th Cir. 2003) ..............................................................27

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.,*

  549 F. 3d 1079 (7th Cir. 2008) ...............................................................22

*Illinois Republican Party v. Pritzker,*

  973 F. 3d 760 (7th Cir. 2020) ..........................................................8,9

*Indiana Protection and Advocacy Services Commission v. Indiana Family and Social Services Administration,*
  149 F. 4th 917 (7th Cir. 2025).............................................................8,32

*K.C. v. Individual Members of Medical Licensing Board of Indiana,*

  121 F. 4th 604 (7th Cir. 2024). .........................................................12,34

*Mays v. Dart,*

  453 F. Supp. 3d 1074 (N.D. Ill. 2020) ...............................................7

*Michigan v. U.S. Army Corps of Eng'rs,*

  667 F. 3d 765 (7th Cir. 2011) ...............................................................22

*Nken v. Holder,*

  556 U.S. 418 (2009) ...............................................................................9

*Promatek Indus., Ltd. v. Equitrac Corp.,*

  300 F.3d 808 (7th Cir. 2002)................................................................27

*Roland Mach. Co. v. Dresser Indus., Inc.,*

  749 F.2d 380 (7th Cir. 1984)................................................................22

*Speech First, Inc. v. Killeen,*

  968 F.3d 628 (7th Cir. 2020)..............................................................8

*Turnell v. Centimark Corp.,*

  796 F. 3d 656 (7th Cir. 2015) ....................................................7,32,33

*U.S. v. Skrmetti,*

    145 S. Ct. 1816 (2025) ................................................................12,13

Vega v. Chicago Park District

    954 F.3d 996 (7th Cir. 2020)................................................................29

*Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.,*

    698 F.2d 862 (7th Cir. 1983)..................................................................8

*Winter v. Nat. Res. Def. Council, Inc.,*

    555 U.S. 7 (2008) .......................................................................7,32

*Whitaker v. Kenosha,*

    858 F. 3d 1034 (7th Cir. 2017) .........................10,11,15,17,21,23,26-28,31,33

**Statutes**

20 U.S.C. § 1681(a) ........................................................................10

775 ILCS 5/1-102(A) .......................................................................34

775 ILCS 5/1-103(O-1) .....................................................................34

775 ILCS 5/7A-102...........................................................................34

775 ILCS 5/7A-104............................................................................34

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant's jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUES

The question before this Court is whether the District Court correctly denied Plaintiff's motion seeking a preliminary injunction that would bar students access to the bathrooms that aligned with their gender identity, and that would require transgender students who are seeking appropriate accommodations to use private alternatives.

Specifically, did the District Court correctly determine that:

(1)     Plaintiff was unlikely to succeed on the merits of both her equal protection and Title IX claims;

(2)     Plaintiff was unable to show that she would be subjected to irreparable harm in the absence of her proposed preliminary injunction;

(3)     Plaintiff was unable to show that there were insufficient alternative remedies at law that could compensate her alleged injury;

(4)     the balance of interests between the parties, and the public, weigh in favor of denying Plaintiff's motion for a preliminary injunction.

## STATEMENT OF THE CASE

### I.     Factual Background

Consistent with both State and Federal law, Bolingbrook High School ("the School") allows transgender students access to the sex-specific bathrooms that align with their gender identity. [Aff. of Dr. Pascavage, D.Ct.ECF 22-2 ¶2]. If a transgender

student wishes to have access to a sex-specific bathroom that does not align with their sex at birth, they may inform Bolingbrook staff. *Id.* ¶3. The School has both transgender females that are allowed access to the women's restrooms and transgender males who are allowed access to the men's restrooms. *Id.* ¶¶7-8.

There are also multiple private bathrooms throughout the School. *Id.* ¶9. Students may request, and are granted, access to these bathrooms for a multitude of reasons, including privacy concerns, medical accommodations, and convenience. *Id.* ¶11.

Plaintiff is a 17-year-old female student enrolled at the School. [Short Appendix ("S.A.") at 2]. In early November 2024, F.F. reported an incident in which a transgender student, who was dressed in "male typical clothes … with no visible indication of female identity," was standing close to F.F.'s stall in the girls' bathroom. *Id.* F.F. was concerned that the student *may* have tried to peek at her through the cracks around the stall door, and she reported the incident to her father and the School. *Id.* Following the incident, Dr. Pascavage, the School Principal, met with F.F. and her father to address F.F.'s privacy concerns. *Id.* at 2; D.Ct.ECF 22-2 ¶15. F.F. was offered access to multiple private bathrooms throughout the School. *Id.* at 2; D.Ct.ECF 22-2 *Id.* ¶16. At any point during Plaintiff's school day, while she was in the building, F.F. would always be within 100 feet of a private bathroom. [D.Ct.22-2 ¶17]. F.F. was also offered a key to the private bathrooms so she could access them whenever she wanted, without the assistance of a staff member. *Id.* ¶18. F.F. declined the key. *Id.* ¶19. In light of F.F.'s concerns, the School installed blinders on

the restroom stalls. [S.A. at 3; D.Ct.ECF 22-2 ¶¶20-21; Photos of Bathroom Stalls with Blinders, D.Ct.ECF 22-4]. These blinders greatly decreased the amount of visual space between the stalls and the stall doors. [D.Ct.ECF 22-2 ¶¶20-21; D.Ct.ECF 22-4].

In January of 2025, F.F. attempted to use a private bathroom that was located in the school's library. [S.A. at 3]. F.F. was made to wait while library staff verified that F.F. was allowed to use that restroom. [2nd Decl. of F.F., D.Ct.ECF 23 at 3¶6]. F.F. grew frustrated with the wait and left. *Id.* If F.F. requested entry to that restroom today, that request would be granted. [Aff. of Lois McDermott, D.Ct.ECF 22-3 ¶¶ 5-7].

F.F.'s father filed a formal Title IX complaint with the School District about the November 2024 incident. [S.A. at 4]. The School District investigated Plaintiff's concerns. *Id.* The complaint was ultimately rejected, finding that the school was appropriately respecting the rights of transgender, nonbinary, and gender nonconforming students in the school setting, and that F.F.'s behavioral concern – that the student may have been peeping on her – was "purely speculative and not based on fact." *Id.*

## II.     Procedural Background

On August 1, 2025, Plaintiff filed her complaint in this matter against Defendants Valley View School District, Dr. Keith Wood in his official capacity as the Superintendent of Schools for the District, and Dr. Jason Pascavage in his official capacity as the Principal of Bolingbrook High School. [Complaint, D.Ct.ECF 1]. The

complaint alleges violations of the Equal Protection Clause of the Fourteenth Amendment and Title IX of the Education Amendments Act of 1972 on the basis of sex discrimination. *Id.* ¶¶63-78. The complaint seeks declaratory relief, injunctive relief, and nominal damages. *Id.* ¶¶ 14, 70, 78.

On August 12, 2025, Plaintiff moved for a temporary restraining order ("TRO") and a preliminary injunction to enjoin the defendants from allowing transgender students access to the bathrooms that align with their gender identity, and to require that transgender students seeking accommodations use private facilities. [Plaintiff's Motion, D.Ct.ECF 12 at 14]. On August 13, 2025, the District Court denied Plaintiff's motion that sought a TRO, and later set a briefing schedule for the motion seeking a preliminary injunction. [Order Denying TRO, D.Ct.ECF 13; Order Setting Briefing Schedule, D.Ct.ECF 21]. Defendants filed their response in opposition to Plaintiff's motion seeking a preliminary injunction, and accompanying exhibits, on September 3, 2025. [Defendants' Response and Memorandum in Support, D.Ct.ECF 22, 23]. On September 8, 2025, Plaintiff filed her reply in support of her motion. [Plaintiff's Reply, D.Ct.ECF 23].

On September 17, 2025, the District Court held oral arguments on Plaintiff's Motion. [Minute Entry on Oral Arguments, D.Ct.ECF 26, Transcript of Oral Arguments, D.Ct.ECF 34]. On September 30, 2025, the Honorable Judge Sharon Johnson Coleman entered an order denying Plaintiff's Motion. [Order Denying Plaintiff's Motion, D.Ct.ECF 27; *see also* S.A. at 1-16]. Plaintiff filed a timely appeal of that order on the same day, September 30, 2025. [Notice of Appeal D.Ct.ECF 28].

## SUMMARY OF ARGUMENT

The District Court correctly found that Plaintiff was unable to carry her burden of proof on both the threshold step and the balancing step of her motion for a preliminary injunction. As such, the District Court's order denying Plaintiff's motion for a preliminary injunction should be affirmed in its entirety.

Plaintiff's equal protection and Title IX claims cannot succeed on the merits, as there is no sex-based discrimination. Plaintiff, like every student within the Valley View School District, is allowed access to the bathroom facility that aligns with her gender identity. The policy applies equally to all students, regardless of their sex, and does not implicate the sex-based protections of the Equal Protection Clause or Title IX.

Further, bathrooms are not inherently private places. Plaintiff takes issue with who she may encounter in a bathroom but fails to articulate how their transgender status is detrimental to her privacy. As schools are still able to punish improper conduct in bathrooms, the presence of a transgender student does not infringe upon any privacy rights. Therefore, the District Court correctly determined that Plaintiff has little chance of success on the merits of her equal protection and Title IX claims.

Plaintiff also fails to show that, absent her preliminary injunction, she would suffer irreparable harm. Plaintiff alleges that she faces shame and anxiety at the thought of encountering someone she believes to be male in a female bathroom. However, Plaintiff's self-diagnosed anxiety is a far cry from the medically supported diminished well-being of the plaintiffs in similar cases. The School has also taken multiple actions to address Plaintiff's privacy concerns. This includes allowing

Plaintiff access to private bathrooms, where she would never have to worry about running into another student. This solution may not be effective when the alleged harm stems from the ostracizing effect of banning someone from their preferred bathroom, but it perfectly addresses Plaintiff's concerns – her privacy. Looking at all of this in light of the fact that Plaintiff has only ever encountered one person she believed to be male inside the women's bathroom, the District Court correctly determined that Plaintiff is not under the threat of any irreparable harm.

Finally, for the threshold step, Plaintiff failed to show that she lacks adequate remedies at law. There are some harms so great that monetary compensation cannot adequately account for the loss. This Circuit has many cases where a transgender person's medical evidence indicated a diminished life capacity too extreme for a simple financial remedy. This is not such a case. Plaintiff's alleged harms – unease, shame, and anxiety from the thought of running into someone she believes to be male – are regularly compensated through financial means. Plaintiff has offered no evidence to show otherwise. Further, Plaintiff failed to show that the additional measures taken by the School do not sufficiently protect her privacy. As such, the District Court properly found that Plaintiff has adequate remedies at law.

Turning to the balancing step, the balance of equities lies decisively in Defendants' favor. Plaintiff's injunction seeks to seclude transgender students to private bathrooms by barring them from the bathrooms that align with their gender identity. Such an injunction would plainly run afoul of the current precedent set in this Circuit – where similar bathroom access policies were found to be

unconstitutional. Such a policy would also violate the Illinois Human Rights Act ("IHRA"), as understood by the Illinois Department of Human Rights' ("IDHR") guidance on protecting transgender students. The public also has an interest in the enforcement of their duly enacted laws. Therefore, the District Court did not abuse its discretion when it found that the balance of interests weighed in the Defendants' favor.

Plaintiff failed to carry her burden on any of the elements for a preliminary injunction, and the order of the District Court should be affirmed.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In fact, a "preliminary injunction is 'an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023), *quoting Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021). *see also Turnell v. CentiMark Corp.,* 796 F.3d 656, 661 (7th Cir. 2015).

The Seventh Circuit has adopted a two-step inquiry to determine the appropriateness of a preliminary injunction. *Mays v. Dart*, 453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020). First, the party seeking the preliminary injunction must show that: (1) absent relief, it will suffer irreparable harm prior to a final resolution; (2) there is no adequate remedy at law; and (3) the party has a reasonable likelihood of success on the merits. *Turnell*, 796 F. 3d at 661-662.

If the movant makes the required threshold showing, then the court proceeds to a balancing analysis in which it considers: (4) the irreparable harm the moving

party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted (the "balance of the equities"); and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the "public interest"). *Id.* at 662. It is often said that "an applicant for preliminary relief bears a significant burden, even though the Court recognizes that, at such a preliminary stage, the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker,* 973 F.3d 760, 763 (7th Cir. 2020).

In reviewing a District Court's grant of a preliminary injunction, appellate courts review legal conclusions de novo, findings of fact for clear error, and the balancing of the harms for an abuse of discretion. *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 545 (7th Cir. 2020). The ultimate decision to grant or deny preliminary injunctive relief is committed to the sound discretion of the district court. *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 864 (7th Cir. 1983). Therefore, appellate review of injunctions is limited. *Indiana Protection and Advocacy Services Commission v. Indiana Family and Social Services Administration*, 149 F. 4th 917, 928 (7th Cir. 2025).

A district court's balancing of equities and assessment of the public interest is entitled to significant deference. *Indiana Protection and Advocacy*, 149 F. 4th at 928; *citing Finch*, 82 F.4th at 578. "[Appellate courts] will not reverse a district court's grant or denial of a preliminary injunction absent a clear abuse of discretion by the

district court." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020) (citation modified).

## ARGUMENT

The District Court properly denied Plaintiff's motion seeking a preliminary injunction. Plaintiff failed to carry her burden on any of the three threshold elements required for a preliminary injunction: (1) she failed to show that she had any chance of success on the merits of her claims; (2) she failed to show that she was under any threat of irreparable harm; and (3) she failed to show that there was no adequate remedy at law for her alleged harms. Going further, Plaintiff also failed to prevail at the balancing analysis: the interests of the Defendants and the public clearly outweighed Plaintiff's. Under the deferential standard by which appeals of preliminary injunctions are reviewed, Plaintiff's appeal should be denied and the order from the District Court should be affirmed.

## I. The District Court properly found that Plaintiff is unlikely to succeed on the merits of her complaint because she fails to show that there has been any discrimination on the basis of sex.

The first, and the most important, criterion is the likelihood of success on the merits. *A.C. by M.C. v. Metropolitan School District of Martinsville,* 75 F. 4th 760, 768 (7th Cit. 2023). The Supreme Court has noted that "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009). Following this guidance, the Seventh Circuit increased the burden that plaintiffs must show to justify a preliminary injunction. Plaintiffs must make a "strong" showing of their chance of prevailing. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763-64 (7th Cir. 2020).

The District Court correctly determined that Plaintiff is unlikely to succeed on the merits of her equal protection and Title IX claims. [S.A at 7, 10]. There is no sex-based discrimination that would trigger heightened scrutiny in this case. Further, Plaintiff's privacy concerns do not rise to the level of a federal cause of action because bathrooms are not private places. Plaintiff is in no position to arbitrate the threshold requirements for gaining access to a sex-specific area. Finally, the actual transgender status of the student Plaintiff encountered has no bearing over this case.

### a. *The Valley View School District bathroom access policy does not discriminate on the basis of sex.*

At the heart of this case, and the District Court's opinion, is the irrefutable fact that the bathroom access allowed in the District does *not* discriminate on the basis of sex. Both the Equal Protection Clause and Title IX operate to protect individuals from disparate treatment at the hands of the government. *City of Cleburne v. Cleburne Living Ctr.*, 105 S. Ct. 3249, 3254 (1985); 20 U.S.C. § 1681(a) (no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance [...])". However, the District Court correctly noted that "ALL students, regardless of gender, are permitted access to facilities that align with their gender identity." [S.A. at 7] (emphasis included in original). As such, this case does not include any sex-based classifications that trigger heightened scrutiny, and Plaintiff is unlikely to succeed on the merits of either claim. *Id.* at 9, 11.

In *Whitaker v. Kenosha,* the court found that a school district policy violated equal protection when it required students to use specific restrooms matching their

birth certificate. 858 F. 3d 1034 (7th Cir. 2017). The *Whitaker* court noted that despite the school's claim that its policy treated all students the same, transgender students who failed to conform to the sex-based stereotypes associated with their assigned sex at birth were treated differently. 858 F. 3d at 1051-52. Subjecting this policy to intermediate scrutiny, the school district failed to show that its transgender discrimination was backed by an exceedingly persuasive justification. *Id.* at 1053. A similar school district bathroom policy was struck down in *A.C. v. Martinsville.* 75 4th 760, 772-73 (7th Cir. 2023). The *Martinsville* court emphasized that gender-affirming facility access does not implicate the interest in preventing bodily exposure, because there is no exposure. *Martinsville*, 75 4th at 773. Therefore, there was no sufficient justification for the disparate treatment, and the policy failed heightened scrutiny. *Id.* The exclusion of the students, which forced them to conform with gender stereotypes, was a violation of the Equal Protection Clause. *Id.*

The District Court properly distinguished the present case from *Whitaker v. Kenosha Unified Sch. Dist No. 1 Bd. of Educ.* and *A.C. by M.C. v. Metro Sch. Dist. of Martinsville*, the two leading cases governing transgender bathroom rights in this Circuit. 858 F.3d 1034 (7th Cir. 2017); 75 F.4th 760 (7th Cir. 2023). In both of those cases the Seventh Circuit determined that the schools had policies that treated students differently based on their transgender status – the schools required students to use sex-specific areas matching their birth certificate, included sex-based classifications regarding transgender students, and treated transgender students who failed to conform to the sex-based stereotypes differently. *See generally*

*Whitaker*, 858 F.3d 1034; *Martinsville*, 75 4th 760. These policies were *exclusive* and found to be unconstitutional by the Seventh Circuit. *Id.* Here, the District's policy is *inclusive* and treats all students identically. [S.A. at 7].

The record in this case strongly supports the District Court's findings. The framework for the District's bathroom access policy derives from the Illinois Department of Human Rights and its guidance that states "[a] student must be permitted to access restrooms or bathrooms, locker rooms and changing rooms that align with their gender-related identity […]." [D.Ct.ECF 1 at 14 ¶¶ 42, 64; D.Ct.ECF 22-1 at 2]. In accordance with that guidance, Bolingbrook High School allows all students access to the bathroom that aligns with their gender identity. [D.Ct.ECF 22-2 at 1¶2]. In light of this, the District Court determined that there is no discrimination based on sex as the access is neutral as to all students. [S.A. at 9, 11].

Recent Supreme Court precedent supports the District Court's order. Specifically, in *U.S. v. Skrmetti*, the Supreme Court found that a Tennessee law ("SB1") prohibiting certain medical treatments for transgender minors was not subject to heightened scrutiny. 145 S.Ct. 1816, 1820 (2025). The *Skrmetti* opinion emphasized that when identifying sex-based discrimination, the focus should be whether a statute or policy prohibits conduct for one sex that it permits for the other. 145 S.Ct. at 1831. *See also K.C. v. Individual Members of Medical Licensing Board of Indiana*, 121 F. 4th 604, 619 (7th Cir. 2024). In the present case the District Court correctly determined that the bathroom policy "does not prohibit conduct for one sex,

namely the use of specific restrooms, that it permits for others since ALL students are permitted to use the restroom that aligns with their gender identity." [S.A. at 8].

Plaintiff contends that there is sex-based discrimination because "male students with non-conforming gender preferences" are allowed access to multi-use, sex-segregated spaces previously designated for females. [ECF 12 at 35]. As such, female students are denied access to "secure, sex-segregated spaces free from male intrusion." *Id.* However, Plaintiff's argument is too narrow, and actively ignores the fact that transgender men, transgender women, cisgender men, and cisgender women are all guaranteed the same accommodations within the school. There is no special or disparate treatment to any identifiable class. Plaintiff, like every other student, may access the bathroom that aligns with her gender identity.

Plaintiff also argues that if the policy allows biological females to access male only spaces based on self-declared preferences, then the policy would "discriminate against both sexes simultaneously by undermining the privacy and safety of sex-segregated spaces for all students." [ECF 12 at 40]. Plaintiff fails to acknowledge, though, that any such discrimination naturally could not be on the basis of sex. Sex-based discrimination turns on whether conduct is permitted for one sex that is denied for the other. *Skrmetti*, 145 S.Ct. at 1831. While Plaintiff may try to claim that such a policy violates the privacy rights of students – it does not (*see infra* §I(b)) – she cannot claim that it is treating the students differently on the basis of sex.

The District Court properly determined that the bathroom access allowed in the District does *not* implicate the sex-discrimination protections of the Equal

Protection Clause or Title IX. [S.A. at 9, 10]. All students are treated equally under the policy, regardless of their sex. *Id.* As such, Plaintiff cannot succeed on her equal protection or Title IX claim.

### b. Plaintiff's privacy concerns do not bolster her equal protection and Title IX claims as bathrooms are not inherently private places under the law.

Underlying almost all of Plaintiff's arguments is a general concern for the safety and privacy of students. For example, Plaintiff alleged that the presence of a biological male in the women's bathroom creates a privacy crisis that the school must address. (D.Ct.ECF 1 at 2 ¶2; 4 ¶7; 12 ¶35; 18 ¶57; 19 ¶59; 22 ¶ 74). This argument exists throughout Plaintiff's appellate brief. She states that by allowing transgender students to access bathrooms aligning with their gender identity the Defendants "deprive[] female students […] of the privacy and safety afforded by sex-segregated facilities." [ECF 12 at 38]. Specific to Plaintiff's Title IX claim, she states that Defendants are "intentionally discriminating against female students by exposing them to the ongoing risk of encountering biological males in female-only spaces." *Id.* at 40.

These arguments are not new to the Seventh Circuit and were addressed in both *Martinsville* and *Whitaker*. Specifically, in *Martinsville*, this Court determined that a bathroom policy which restricted bathroom access based on biological sex to address "privacy concerns" for cisgender students violated Title IX because a transgender student's presence in their gender affirming bathroom "did not threaten those privacy interests" and because "gender-affirming access policies neither thwart rule enforcement nor increase the risk of misbehavior in bathrooms and locker

14

rooms." *See Martinsville*, 75 F. 4th at 773-774. The *Martinsville* court went on to say that "[c]ommon sense tells us that the communal restroom is a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall." 75 F. 4th at 773 (*quoting Whitaker,* 858 F. 3d at 1052). In fact, in *Martinsville,* the court categorized the school district's privacy argument as "fighting a phantom" because "[g]ender-affirming facility access *does not implicate* the interest in preventing bodily exposure, because there is no such exposure." *Martinsville*, F. 4th at 773 (emphasis added).

The *Whitaker* court noted that:

> A transgender student's presence in the restroom provides no more of a risk to other students' privacy rights than the presence of an overly curious student of the same biological sex who decides to sneak glances at his or her classmates performing bodily functions. Or for that matter, any other student who uses the bathroom at the same time.

858 F.3d at 1052.

The District Court, in analyzing *Whitaker* and *Martinsville*, correctly determined that Plaintiff's privacy concerns do not warrant an order barring the District from treating all of its students equally. [S.A. at 11]. Plaintiff's request, predicated on privacy concerns, would disparately treat all transgender students worse, in the exact way this Court condemned in *Whitaker* and *Martinsville. Id.*

The record, and Plaintiff's allegations, further show that the School appropriately addressed any and all of Plaintiff's privacy concerns. While the school embraces a constitutional, gender-affirming policy, it still investigates allegations of misconduct. This was confirmed by Defendant's counsel during oral arguments. A

student who is inappropriately in a bathroom is still subject to discipline. [D.Ct.ECF 34 at 17¶21-18¶3]. Indeed, Plaintiff's own incident was investigated by the school, and they determined that there was no evidence the student in question was guilty of any misconduct: there was no evidence that the student was trying to peep into Plaintiff's stall. [D.Ct.ECF 1 at 17 ¶¶52-61]. Further, as argued below, the School went above and beyond to accommodate Plaintiff, and address her privacy concerns. *See infra* § I(c).

Plaintiff also argues that the mere presence of a biological boy in a bathroom implicated privacy concerns and violated Title IX – where an encounter would cause anxiety, humiliation, and educational disruption. [ECF 12 at 40]. The District Court determined that Plaintiff's allegations of encountering a boy in the restroom were based on a "singular speculative conclusion" that the person she encountered did not identify as a female. [S.A. at 11]. To accept Plaintiff's allegations would require improper sex-stereotyping. *Id.*

The District Court properly concluded that to accept Plaintiff's privacy arguments would be wholly contradictory to precedent and would disparately treat transgender students worse. *Id.* The Seventh Circuit has made it clear that bathrooms are not inherently private places, and that the mere presence of a transgender student in a bathroom does not threaten privacy interests. *See Martinsville*, 75 F. 4th at 773-774. Going further, the presence of any other student in the bathroom does not threaten privacy interests because "[c]ommon sense tells us that the communal restroom is a place where individuals act in a discreet manner to

protect their privacy and those who have true privacy concerns are able to utilize a stall." 75 F. 4th at 773 (*quoting Whitaker,* 858 F. 3d at 1052). As such, Plaintiff's privacy concerns do not salvage her deficient equal protection and Title IX claims.

### c. Plaintiff's demand for objective criteria to prove gender identity was inconsequential to the District Court's decision, is unconstitutional under current case law, and would be unenforceable as policy.

Plaintiff, in no uncertain terms, argues that objective criteria must be required for a person to prove their gender identity. [ECF 12 at 24-28]. Plaintiff believes that lacking objective criteria would violate her equal protection and Title IX rights, and that the Seventh Circuit underscored this requirement in its *Martinsville* decision. *Id.* at 26-28. As such, Plaintiff believes that the District Court committed legal error when it decided Plaintiff had no chance of success on the merits of her claims. *Id.* at 28.

As an initial matter, the District Court's decision on the merits of Plaintiff's case has little to do with any criteria required to prove gender identity and has everything to do with the complete lack of sex-based discrimination. *See supra* §I(a). The District Court did not decide that schools may not use any criteria to prove gender identity; the District Court found that all students are treated equally under the District's policy, regardless of their sex. [S.A. at 9, 10].

The District Court correctly noted, however, that Plaintiff's desire for objective criteria would create an unconstitutional policy – one that is similar to the policies struck down in *Whitaker* and *Martinsville*. [S.A. at 7]. In *Whitaker,* the school requested "unspecified 'legal or medical documentation'" so it could change the student's official records prior to allowing bathroom access. 858 F.3d at 1041. The

school then told plaintiff he would need to begin surgically transitioning. *Id.* The *Whitaker* court, in striking down the policy, noted that objective criteria are often poor at denoting a student's biological sex or gender identity. *Id.* at 1053. In *Martinsville*, the school used an extensive list of factors to confirm a student's transgender status: the length of time the student had identified as transgender; whether the student was under a physician's care; whether the student had been diagnosed with gender dysphoria; whether the student received hormone treatment; and whether the student had received a legal name change or gender-marker change. 75 F.4th at 765. The *Martinsville* court struck down the policy finding that the school did not have an exceedingly persuasive justification for excluding the students from their preferred bathrooms, especially in light of the ample evidence from all of the transgender students that confirmed their transgender status. *Id.* at 772-73.

Plaintiff believes that objective criteria should be required to prove one's gender identity, but in light of the *Martinsville* and *Whitaker* decisions, it is unclear what exactly those criteria would be. As the District Court noted, "any policy based on medical documentation of biological gender would run afoul to the rulings in *Whitaker* and *Martinsville*[.]" [S.A. at 7]. Plaintiff's objective criteria requirement would force the District to navigate a legal minefield rife with unconstitutional criteria that would likely end up violating a transgender student's rights.

However, there is no requirement for the District to do so. To be sure, if a school district wished to engage in such an undertaking, the *Martinsville* court left the door open for schools to take "reasonable measures [...] to ensure that a student needs the

requested accommodation." 75 F.4th at 773. However, *Martinsville* makes it clear that such a decision lies in the hands of the District, and does not require schools to exhaustively confirm every bathroom accommodation request. *Id.* This is supported by the *Martinsville* finding that the "danger" of not objectively confirming a student's transgender status – that being a student masquerading as transgender to gain access to opposite sex facilities – "has *never* materialized." *Id.* at 774 (emphasis included in original). Simply put, there is no legal requirement that schools must create objective criteria to prove a student's gender identity.

Finally, the District Court correctly noted that Plaintiff's desire for "objective criteria" improperly relies on sex-stereotyping. In oral arguments on the preliminary injunction, Plaintiff's counsel said that Plaintiff encountered "an obvious male." [D.Ct.ECF 34 at 4 ¶5]. The ensuing line of questions made it clear that the student's clothing and way of speaking made Plaintiff believe the student was a male. *Id.* at 4 -6. To accept that a student's outward appearance can conclusively prove their gender identity leads to the exact scenarios rebuked in *Whitaker* and *Martinsville* – it discriminates against students for not conforming to gender norms. As such, it is clear that Plaintiff's preferred "objective criteria" requirement is not legally sound.

### d. *Plaintiff's concerns over the actual transgender status of the student in question has no bearing over this case.*

Plaintiff spends a substantial part of her brief challenging the actual transgender status of the other student in the bathroom. [ECF 12 at 12-20]. Plaintiff reiterates that the student she encountered "wore typical male clothing" and showed "no outward appearance or indication of presenting as female." *Id.* at 13. Plaintiff

believes that the District Court improperly accepted the student's transgender status as a fact, which in turn impaired the "success on the merits" analysis. *Id.*

Taking Plaintiff's argument in stride, it should first be noted that the actual transgender status of the student was not relevant to the District Court's analysis of the merits of Plaintiff's claims. As has been discussed above, Plaintiff alleges that the bathroom access allowed in the District improperly discriminates against women on the basis of sex. [ECF 12 at 34-42]. However, the District Court determined that the access applies equally to all students, regardless of their sex. [S.A. at 7]. Plaintiff asserts that an alleged factual error undermines the District Court's analysis to the point of committing legal error [ECF 12 at 15], but fails to recognize that the actual transgender status of the student in the bathroom was inconsequential to the District Court's analysis of the District's bathroom access policy. [S.A. at 7-9].

Even if the student's transgender status was vital to the Court's determination, such a finding would only be reversible for clear error, which has not occurred here. *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 545 (7th Cir. 2020). Plaintiff alleges that Defendants provided no evidence to prove the student's transgender status. [ECF 12 at 13]. Such an accusation ignores Plaintiff's own affidavit averring that the student had worked with the school and was granted access to the bathroom pursuant to a personalized support plan intended to accommodate the student's gender identity. [D.Ct.ECF 12 at 2¶5]. It also ignores testimony in the oral argument that plainly confirmed that the student is transgender. [D.Ct.ECF 34 at 16 ¶¶19-21].

In contrast, Plaintiff alleges that the student was not transgender through the process of sex-stereotyping. [ECF 12 at 13]. The District Court chose to credit Defendants' account that the student was in fact transgender and declined to accept Plaintiff's stereotype-driven simplification of gender identity. [S.A. at 2] ("Plaintiff observed a *transgender* student […] standing in close proximity to her stall" and "Dr. Pascavage responded that the *transgender* female student had been granted access to the girls' restroom pursuant to an individual Development Plan")(emphasis added). While this decision is not relevant to the merits of Plaintiff's claims, it is also not clear error.

Finally, Plaintiff argues that Defendants should be forced to require the same level of medical documentation and expert testimony as the *Martinsville* and *Whitaker* plaintiffs in order to prove the student's transgender status. [ECF 12 at 14, 17-18]. However, Plaintiff fails to recognize that *she* is the moving party in this matter. In *Martinsville* and *Whitaker,* the moving party – transgender students – disclosed medical documentation and expert testimony in order to carry their immense burden of proof for a preliminary injunction. 75 F.4th at 764-65; 858 F.3d at 1040-41. Specifically, the courts used this evidence to validate the plaintiffs' claims of irreparable harm – a showing Plaintiff has also failed to make (*see infra* §II(a)). *See A.C. by M.C. v. Metropolitan School District of Martinsville,* 601 F. Supp. 3d 345, 354-55 (N.D. Ind. 2022) *aff'd* 75 F.4th 760 (7th Cir. 2023); *Whitaker*, 858 F.3d at 1045. As such, even if the transgender status of the student was dispositive to this case, it

does not make sense to hold Defendants, the non-moving party, to the same standard as the moving party in a different case.

## II. The District Court correctly found that Plaintiff cannot show a likelihood of irreparable harm due to the nature of Plaintiff's alleged harm.

To succeed on a motion for a preliminary injunction, the moving party must show that she will likely suffer irreparable harm, absent obtaining preliminary injunctive relief. *See Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 787 (7th Cir. 2011). This requires more than a mere possibility of harm. *Id.* at 788. Harm is considered irreparable if it "cannot be prevented or fully rectified by the final judgment after trial." *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1089 (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). Because a district court's finding on irreparable harm is a factual determination, it is reviewed for clear error. *Id.* at 1087.

The District Court correctly found that Plaintiff failed to show she would suffer irreparable harm in the absence of an injunction. The District Court correctly distinguished Plaintiff's alleged harm from the serious medical and emotional harms the *Martinsville* and *Whitaker* plaintiffs suffered. Further, the District Court noted the great effort put forth by the School to accommodate Plaintiff's privacy concerns. Finally, Plaintiff's harm arose from a single, isolated encounter.

### a. Plaintiff's alleged harm is distinguishable from the harms alleged in similar cases.

The District Court determined that Plaintiff's alleged harm was noticeably different than the serious and irreparable harms faced by the *Martinsville* and *Whitaker* plaintiffs. [S.A. at 12]. In *Martinsville,* the plaintiff proved that being

excluded from the men's restrooms worsened the "significant distress, depression and anxiety" caused by his gender dysphoria and that "using the remote unisex bathroom drew undesirable attention to his transgender status." 75 4th at 760. In *Whitaker*, the plaintiff described "thoughts of suicide" in response to the school's exclusionary policies, and the record demonstrated that "[alternative] bathrooms were not located close to [plaintiff's] classroom." 858 F. 3d at 1045.

Further, the evidence provided by the plaintiffs in *Whitaker* and *Martinsville* was vital in their courts' determinations that the plaintiffs were facing irreparable harm. In *Whitaker,* the plaintiff provided expert testimony on how his gender dysphoria exacerbated his feeling of being different; and put him at risk of diminished well-being and life-function. 858 F. 3d at 1045. In *Martinsville,* the Seventh Circuit affirmed the district court's analysis which found that in light of the plaintiff's gender dysphoria, and the additional stigmatization and attention that came with accessing a private restroom, that the plaintiff faced irreparable harm *A.C. by M.C. v. Metropolitan School District of Martinsville,* 601 F. Supp. 3d 345, 354-55 (N.D. Ind. 2022) *aff'd* 75 F. 4th 760 (7th Cir. 2023). The plaintiff had to go to the health clinic, ask permission, and sign his name prior to using the restroom. *Id.*

By contrast, Plaintiff argues that she experiences "intense feelings of anxiety, discomfort and shame" at the thought of encountering a transgender person in the women's bathroom. [ECF 12 at 43]. In support of this assertion, Plaintiff offered only her self-sworn affidavits, with zero medical documentation or testimony as to how such an encounter affects her daily well-being, mental state, or life function.

[D.Ct.ECF 12 at 16-20; D.Ct.ECF 23 at 18-22]. The District Court correctly noted that Plaintiff's harms were distinguishable and did not rise to the sufficient level to justify a preliminary injunction. [S.A. at 12]. This was especially true in light of the "entirely conjectural" assumption by Plaintiff that a transgender student did not sufficiently meet the gender stereotypes of a girl. *Id.*

Plaintiff argues that the District Court erred in its analysis of the seriousness of the *Martinsville* and *Whitaker* plaintiffs' harms. [ECF 12 at 44]. Specifically, Plaintiff takes issue with the fact that her harms lacked "stigmatization stemming from gender dysphoria" or "suicidal ideations." *Id.* In *Martinsville*, the court noted, and Defendants agree, it is not necessary for a student to show suicidal ideations to establish irreparable harm. *Martinsville*, 601 F. Supp. 3d at 355. That is not, and has never been, the standard in this Circuit. *Martinsville*, 75 F. 4th at 774. However, in its analysis the District Court correctly distinguished the medically diagnosed, and potentially life-threatening, harms that the *Martinsville* and *Whitaker* plaintiffs proved from Plaintiff's generalized anxiety and shame. [S.A. at 12]. Simply put, Plaintiff did not meet her burden of proof in showing irreparable harm, and the District Court did not commit clear error in its findings.

### b. *The School has taken multiple steps to address Plaintiff's privacy concerns.*

The record shows that the School has made every attempt to protect Plaintiff's privacy and address her concerns. The District Court found that Defendants took "great care" regarding Plaintiff's concerns, "notwithstanding the complete lack of requirement to do so." [S.A. at 13]. Plaintiff, therefore, cannot claim that an

injunction is the only way to prevent the alleged shame and anxiety she feels at the thought of encountering a transgender person in the bathroom.

Specifically, the School added blinders to the bathroom stall doors to reduce the amount of visible space between the door and the stall. [D.Ct.ECF 22-2 ¶¶20-21; D.Ct.ECF 22-4]. The School offered Plaintiff access to private bathrooms. [D.Ct.ECF 22-2 ¶¶ 15-16, D.Ct.ECF 22-3 ¶¶ 5-7]. At any point during Plaintiff's school day, while she was in the building, Plaintiff would always be within 100 feet of one of those private bathrooms. [D.Ct.ECF 22-2 ¶17]. The School even offered Plaintiff her own key to the private bathrooms so she could come and go at her own convenience. [D.Ct.ECF 22-2 ¶¶ 18-19]. A key that is still available to Plaintiff if she were to request it. [D.Ct.ECF 34 at 20 ¶¶17-19]. The District Court, noting all of this, determined that "Defendant's accommodation of a private bathroom went beyond what Defendant [was] required by law to provide." [S.A. at 13].

Unlike *Martinsville* and *Whitaker*, there are no additional stigmatizing concerns that would make these remedies deficient. The *Martinsville* court credited the plaintiff's medical harm from the ostracizing effect of being barred from their preferred bathroom, and from having to go well out of their way to use the only available private bathroom. *A.C. by M.C. v. Metropolitan School District of Martinsville,* 601 F. Supp. 3d 345, 354-55 (N.D. Ind. 2022) *aff'd* 75 F. 4th 760 (7th Cir. 2023). However, it is undisputed that multiple students have requested, and been given access, to the School's private bathrooms for a multitude of reasons. (D.Ct.ECF 22-2 ¶11). Had Plaintiff accepted the key, she would not need to talk with staff prior

to using one of these bathrooms, unlike the Plaintiff in *Martinsville*. *Id.* ¶18. Further, at any point during her day Plaintiff would be no more than approximately 100 feet from a private bathroom. *Id.* ¶17. There is no stigma involved.

Importantly, unlike *Martinsville* and *Whitaker*, Plaintiff is not being excluded from her preferred bathroom by a policy. She is free to use the bathroom that aligns with her gender identity. As Plaintiff herself stated, it is the denial of access to the facility of one's choosing that the *Whitaker* court found caused irreparable psychological damage. [D.Ct.ECF 12 at 11] (citing *Whitaker*, 858 F. 3d at 1045). Plaintiff has no such restriction. Plaintiff's fears and anxiety do not stem from accessing a private bathroom, but from her fear of running into a transgender woman in the women's bathroom. This is different from the plaintiffs in *Whitaker* and *Martinsville,* whose harms stemmed from being ostracized. As such, the District Court correctly found that the efforts by the Defendants were sufficient to address Plaintiff's concerns. [S.A. at 13].

### c. *The record indicates that the underlying incident only ever occurred once, which is insufficient to show that irreparable harm is occurring.*

Finally, Plaintiff's single incident from November 2024 is the only reported incident the School has received from Plaintiff to date. (D.Ct.ECF 22-2 ¶ 25). All of the future harm that Plaintiff alleges is based off of conjecture and speculation at the "possibility" of running into a transgender student in the bathroom. [ECF 12 at 43].

In *Whitaker*, the court noted that neither party could point to any evidence that the School District had received a complaint from a student about the plaintiff using the bathroom that matched his gender identity. 858 F.3d at 1052. Similarly,

outside of Plaintiff's single November 4, 2024, incident, Plaintiff fails to point to any other occurrences that would show that she is facing irreparable harm and warrant a remedy as extreme as a preliminary injunction. In her own affidavit, Plaintiff states that she has "heard from other female students […] who share [her] concerns about male students accessing female-only spaces," but she does not claim that there have been other incidents or complaints like hers. (D.Ct.ECF 12 at 19 ¶12). The only, singular, incident that Plaintiff has proven was the November 4, 2024, incident, after which the school went above and beyond to try to accommodate Plaintiff's concerns.

Further, the District Court was suspicious of Plaintiff's account, finding that the only proof that Plaintiff's privacy was actually invaded was "one individual's singular, speculative opinion." [S.A. at 13]. As the *Whitaker* court noted this singular, blanket accusation from Plaintiff ignores the practical reality of how people use the bathroom, "by entering a stall and closing the door." 858 F.3d at 1032. Simply put, Plaintiff's single incident does nothing to show that there is irreparable harm that needs curing.

III.   **The District Court correctly found that Plaintiff cannot show that she lacks adequate remedies at law to compensate her alleged harms.**

The final consideration during the threshold analysis of a motion for a preliminary injunction is to determine whether adequate remedies at law exist in absence of the requested relief. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). This requires a showing that any award would be "seriously deficient as compared to the harm suffered." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003).

The District Court, in examining the factual record, determined that Plaintiff could not succeed on this prong for two reasons. First, Plaintiff could not show her harms could not be remedied by monetary damages. Second, the record indicated that the alternative measures the school provided were sufficient to address Plaintiff's concern.

### a. Plaintiff's alleged harms are monetarily compensable and are incomparable to the extensive medical harm proven in other cases.

The District Court found that Plaintiff did not establish that her alleged harm – undiagnosed anxiety – could not be remedied through monetary means. [S.A. at 14]. Specifically, the District Court compared Plaintiff's alleged harm to the proven injuries in *Martinsville* and *Whitaker*. *Id.* In *Whitaker*, the plaintiff's suicidal ideations were credited by an expert witness, and the court correctly found that monetary damages could not remedy such a harm. 858 F. 3d at 1046. Nor could tort damages account for "life-long diminished well-being and life-functioning." *Id.* The *Martinsville* court echoed this sentiment, noting that the decision was based on facts in the record – which included medical evidence of the plaintiff's diagnosis and resulting struggles. F. 4th at 764, 774.

Comparing these cases to the one at bar, the District Court correctly noted that Plaintiff never proved how her undiagnosed anxiety could not adequately be monetarily compensated. [S.A. at 14]. In her brief, Plaintiff makes no mention of this District Court finding. [ECF 12 at 45-46]. Plaintiff appears content to challenge the sufficiency of the school's additional protections rather than challenge the District Court's finding that her alleged injuries can be adequately remedied at law. *Id.* In

fact there is no basis for her to now claim that her self-assessed anxiety, shame, and educational disruption come anywhere close to the serious, medically backed harms proven in *Martinsville* and *Whitaker*.

Nonetheless, the emotional damages of which Plaintiff complains – anxiety, shame, and educational disruption – are commonly compensated by monetary awards. In *Vega v. Chicago Park District*, the plaintiff testified extensively about the emotional, mental, and physical distress that she suffered for the final six months of her employment due to the effects of discrimination. 954 F.3d 996, 1008 (7th Cir. 2020). The Court found that plaintiff was properly compensated through monetary means. *Id.* 1008-09. In *Faras v. Citizens Bank & Tr. Of Chi.* this court upheld the jury's award of monetary damages to the plaintiff for loss of dignity, humiliation, emotional distress, and pain and suffering when the plaintiff "lost self-esteem, gained weight, [and] had problems sleeping" as a result of discrimination." 433 F. 3d 558, 563 (7th Cir. 2006). As such, the District Court correctly determined that Plaintiff's alleged harms could be adequately compensated monetarily.

### b. *The extensive precautions taken by the District sufficiently protect Plaintiff's privacy concerns.*

The District Court also noted that the precautions already taken by the Defendants may adequately remedy Plaintiff's privacy concerns. [S.A. at 14]. Plaintiff argues that these remedies are insufficient because: (1) the additional privacy blinders are not extensive enough: (2) Plaintiff, on one occasion, experienced difficulty accessing the private facility; and (3) the private bathrooms are not consistently accessible and require Plaintiff to disrupt her education to reach them. [ECF 12 at

47]. All of these arguments fail to show that the District Court's determination was based on clear error.

First, it is undisputed that the additional privacy blinders did in fact increase the privacy in bathroom stalls across the school campus by decreasing the amount of space between the stall doors and the stall. [D.Ct.ECF 22-4]. Plaintiff argues that the blinders still fail to cover the areas above and below the stall, and that the bathrooms in the locker rooms do not have the blinders. [ECF 12 at 46]. Plaintiff's argument is disingenuous. As discussed above, bathrooms are not private places. *See supra* §I(b). The blinders have increased privacy within bathrooms across the campus, and to the extent any student engages in misconduct by trying to peer above or below the stall door, the school remains able to investigate and punish such behavior – regardless of that student's gender identity. *Martinsville*, 75 4th at 773.

Plaintiff's singular event where she tried to use the bathroom in the library does not show that the District's remedies are insufficient. As Plaintiff admits, she was never denied access to a private bathroom, she merely grew frustrated that she was made to wait before being given access. [ECF 12 at 47]. The same staff member Plaintiff alleges made her wait to enter the private bathroom has since testified that "if Plaintiff were to approach [her] during the school day and ask [her] for access to the private restroom in the library [she] would grant [Plaintiff] access." [D.Ct.ECF 22-3 at 1 ¶7]. There is no evidence in the record to dispute this.

Finally, there is a distinct difference between the emotional stress, anxiety, and stigma that the *Whitaker* and *Martinsville* plaintiffs felt when forced to use a

separate restroom versus the anxiety Plaintiff alleges that she feels. In both *Whitaker* and *Martinsville,* the plaintiffs' general emotional damages arose from a policy that forced them to act as social pariahs, and exacerbated issues attached to their diagnosed gender dysphoria. *Whitaker,* 858 F. 3d at 1046; *Martinsville*, 601 F. Supp. 3d at 355. However, Plaintiff's anxiety and distress is based on her privacy concerns, and her fear that she will run into someone she perceives as a male in the bathroom. [ECF 12 at 47-48]. While the private bathroom solution exacerbated the social stigma harm salleged by the *Whitaker* and *Martinsville* plaintiffs, it completely addresses the privacy concerns at issue in the present case.

Plaintiff's allegation that the alternate facilities are too inconvenient for her to access is not supported by the record. Defendant Pascavage testified that at any point during Plaintiff's school day she would be no farther than approximately 100 feet from a private bathroom, and that she was offered a key that would allow her to access those bathrooms without the help of a staff member. [D.Ct.ECF 22-2 at 3 ¶¶17-18]. This is in stark contrast to the alternate facilities in *Whitaker* that were not located close to any of the plaintiff's classrooms, and whose use "further stigmatize[d] [plaintiff] and cause[d] him to miss class time, or avoid use of the bathroom altogether at the expense of his health." 858 F.3d at 1045-46. As such. the District Court did not err when it found that Plaintiff failed to carry her burden on this element of the preliminary injunction analysis.

IV. **The District Court did not abuse its discretion when it balanced the equities in the Defendants' favor.**

Before issuing an injunction, courts are required to "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). This "balancing stage" is done on a sliding scale measuring the balance of harms against the moving party's likelihood of success. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). The more likely she is to succeed on the merits, the less the scale must tip in her favor. *Id.* The converse, however, is also true: the less likely she is to win, the more the balance of harms must weigh in her favor for an injunction to issue. *Id.* A district court's balancing of equities and assessment of the public interest is entitled to significant deference. *Indiana Protection and Advocacy Services Commission v. Indiana Family and Social Services Administration*, 149 F. 4th 917, 928 (7th Cir. 2025).

In the present case, the District Court balanced the interests in favor of the Defendants, noting that the current policy enforced by the District complies with both state and federal guidance on the matter. [S.A. at 16]. Plaintiff takes issue with the assessment and argues that because the constitutional and statutory rights of all female students are being violated that the public interest is better served by granting her injunction. [ECF 12 at 48]. Plaintiff also argues that the District would face minimal harm in employing her proposed alternative – ostracizing transgender students to private facilities and denying them access to bathrooms that align with their gender identity. *Id.*

The first issue with Plaintiff's argument is that it presupposes her rights are actually being violated. As the District Court noted, Plaintiff does not have a high likelihood of success on the merits of her equal protection and Title IX claims. [S.A at 7, 10]. This means she needs to work harder in order to balance the equities in her favor. *Turnell*, 796 F.3d at 662. Instead, Plaintiff attempts to bootstrap her equities argument with her deficient claims. [ECF 12 at 48]. This does not, in any way, indicate an abuse of the District Court's discretion.

Further, Plaintiff's alternative does not present "minimal harm" to the Defendants. *Id.* Plaintiff's proposed solution is the exact scheme employed by the school districts in *Whitaker* and *Martinsville.* [S.A. at 7-8]. Plaintiff asked the District Court to endorse a restroom scheme that has regularly been found to be unconstitutional. As it stands, Plaintiff's solution would expose the District to lawsuits from transgender students wishing to use the restroom best aligned with their gender identity. This, in and of itself, places the balance of equities in favor of Defendants.

To be sure, "protecting civil and constitutional rights is in the public interest." *Martinsville*, 75 F. 4th at 774. As every case on this issue has made clear, granting Plaintiff's proposed preliminary injunction would likely violate the rights of every transgender student in the District. The public interest is best served by allowing the District to continue unabated, instead of adopting Plaintiff's proposed policy – which has already been adjudicated as unconstitutional. *See generally Martinsville,* 75 F. 4th 760 (7th Cir. 2023); *also Whitaker,* 858 F. 3d 1034 (7th Cir. 2017).

There is also the interest of not violating the rights of individuals under the Illinois Human Rights Act. The IHRA makes it a civil rights violation for schools to "[d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services" on the basis of gender identity or other protected status. 775 ILCS 5/1-102(A); *see also* 775 ILCS 5/1-103(O-1). Failure to comply with the IHRA could result in an influx of administrative complaints and lawsuits being filed against the District. 775 ILCS 5/7A-(102,104). As the Seventh Circuit has also noted, enforcement of duly enacted laws is in the public interest; and an injunction preventing duly enacted laws would cause "significant harm" to Illinois and the public interest. *K.C. v. Individual Members of Medical Licensing Board of Indiana*, 121 F. 4th 604, 633 (7th Cir. 2024). Illinois' voters have, through their representatives, legislative and executive, decided to enshrine and protect the rights of various people, including transgender students, under the IHRA. 775 ILCS 5/1-102(A); *see also* 775 ILCS 5/1-103(O-1); *K.C.*, 121 F. 4th at 633. The people of Illinois have a substantial interest in that law being enacted and followed by public schools. *Id.*

Plaintiff spends a great deal of time discussing her issues with the Illinois Department of Human Right's Non-Binding guidance regarding the treatment of transgender students. Specifically, Plaintiff argues that the guidance demands substantiated gender identity, that is supported by objective criteria. [ECF 12 at 21-22]. Plaintiff also argues that if the IDHR's guidance were interpreted as not requiring objective criteria, it would then be superseded by the Equal Protection Clause and Title IX. *Id.* at 22-23

Plaintiff's arguments on federal supremacy hold no water. For the reasons discussed above, neither the equal protection clause nor Title IX prohibit an inclusive policy like the one endorsed by the District.

Further, the plain language of the IDHR's guidance leaves no room for Plaintiff's interpretation. The IDHR guidance in the record states that "[a] student must be permitted to access restrooms or bathrooms, locker rooms and changing rooms that align with their gender-related identity and without having to provide documentation or other proof of gender. (D.Ct.ECF #22-1 at 2). The IDHR guidance also explains how "[i]n the school environment, examples of discriminatory treatment or harassment prohibited by the [IHRA] may include, but is not limited to: [p]rohibiting a student from using a facility (restroom, locker room, changing room) that corresponds to the student's gender identity[.]" *Id.* at 1.

Because the existing case law in this Circuit clearly precludes Plaintiff's preferred relief, and because the public has a strong interest in enforcing its duly enacted law, the District Court did not abuse its discretion by weighing the equities in Defendants' favor.

## CONCLUSION

For these reasons, the District Court properly denied Plaintiff's motion seeking a preliminary injunction. She could not clear any of the threshold elements required for a preliminary injunction, and then failed to make any substantive showing at the balancing step.

In this appeal, Plaintiff has again failed to make any of the necessary showings to warrant a reversal of the District Court's order. Plaintiff has pointed to no legal

conclusions that need to be overturned. Further, the record supports every finding of fact made by the District Court, and in no way indicates clear error. Finally, the District Court did not abuse its discretion when it weighed the interests in favor of the Defendants.

Defendants respectfully request that this Court affirm the District Court's order denying Plaintiff's preliminary injunction, and for all other just and proper relief in the premises.

Dated: December 5, 2025 Respectfully submitted,

_Darcy L. Proctor_

Darcy Proctor
John O'Driscoll
Alexander Myers
TRESSLER LLP
233 S. Wacker Drive, 61st Floor
Chicago, IL 60606
312-627-4000
dproctor@tresslerllp.com
jodriscoll@tresslerllp.com
amyers@tresslerllp.com

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7)

The undersigned counsel of record for the Defendants-Appellees, VALLEY VIEW COMMUNITY UNIT SCHOOL DISTRICT 365U, JASON PASCAVAGE, KEITH WOODS, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7) and Cir. R. 32:

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with proportionally spaced font. The length of this brief is 9624 words, verified with the "word count" function of Microsoft Word 2010, inclusive of all main text and footnotes and excluding all parts of the brief excluded by F.R.A.P. 32(f).

This brief also complies with the typeface requirements of F.R.A.P. 32(a)(5) and the style requirements of F.R.A.P. 32(a)(6) because it has been prepared using a proportionally spaced typeface (Century) in 12-point type for the text.

By: */s/ Darcy Proctor*_____

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 5, 2025, she electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


By: _/s/ Darcy Proctor_____