# IN THE
# United States Court of Appeals
## FOR THE SEVENTH CIRCUIT

F.F., a minor, by and through her next friend and
father, JAMES ELLARD FISHER, individually,
and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.

VALLEY VIEW COMMUNITY
UNIT SCHOOL DISTRICT 365U *et al.,*

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
Case No. 1:25-cv-9112
The Honorable Judge Sharon Johnson Coleman

## REPLY BRIEF
## OF PLAINTIFFS-APPELLANTS

Ajay Gupta
The Law Offices of Ajay Gupta
2849 Bond Circle
Naperville, IL 60563
630-854-7194
ajguptaemail@gmail.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................. iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ........................................................................................................ 3

   I.   **Defendants Misstate Controlling Seventh Circuit Precedent.**........................ 3

     A.  *With Mukwonago Vacated, Only Whitaker and Martinsville Are Binding—and Neither Requires Denying Preliminary Injunctive Relief Here.*...................... 3

     B.  *Whitaker and Martinsville Presuppose the Legitimacy of Sex-Segregated  Intimate Spaces.*................................................................................................ 5

     C.  *Whitaker and Martinsville Recognize Narrow, Fact-Specific Exceptions—Not a General Rule.*...................................................................................................... 7

     D.  *This Case Falls Well Outside the Narrow Bounds of Whitaker and    Martinsville.* 8

   II.   **The District Court's Legal Errors Require Reversal.**..................................... 9

     A.  *Treating a Conclusory Label as Dispositive Is Legal Error.* ................... 10

     B.  *Reliance on Non-Binding Guidance Cannot Override Federal Law.*..................... 12

     C.  *Mischaracterizing Privacy Interests Skewed the Analysis.* ..................... 13

     D.  *These Errors Infected the Entire Preliminary-Injunction Analysis.*........................ 14

   III.   **Irreparable Harm and the Balance of Equities Favor Interim Relief.** ...... 16

     A.  *Loss of Bodily Privacy in Intimate Spaces Is Irreparable.*...................... 16

     B.  *Alternative Accommodations Do Not Cure the Harm.* ....................... 17

     C.  *Procedural Stasis Magnifies the Irreparable Harm.*............................... 18

     D.  *The Balance of Equities Favors Preserving the Status Quo.* ................. 20

     E.  *Irreparable Harm and Equities Are Closely Linked Here.*.................... 21

   IV.   **The Public Interest and a Narrow Remedy Favor Interim Relief.**........... 22

     A.  *The Public Interest Favors Enforcement of Constitutional and Statutory Rights.* .. 22

     B.  *Plaintiffs Seek Guardrails, Not Prohibition.*........................................ 23

     C.  *Preserving Judicial Review Is Itself a Compelling Public Interest.*......................... 24

     D.  *A Narrow Remedy Avoids Disruption and Preserves Institutional Interests.*........... 25

CONCLUSION ................................................................................................... 25

CERTIFICATE OF COMPLIANCE ................................................................. 28

CERTIFICATE OF SERVICE.................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*A.C. by M.C. v. Metropolitan School District of Martinsville,*
   75 F.4th 760 (7th Cir. 2023) .......................................................................... *passim*

*Adams ex rel. Kasper v. St. Johns Cnty. Sch. Bd.,*
   57 F.4th 791 (11th Cir. 2022) (en banc) ............................................ 5, 8

*Am. C.L. Union of Illinois v. Alvarez,*
   679 F.3d 583 (7th Cir. 2012) .............................................................. 22

*Brannum v. Overton Cnty. Sch. Bd.,*
   516 F.3d 489 (6th Cir. 2008) .............................................................. 14

*D.P. by A.B. v. Mukwonago Area School District,*
   140 F.4th 826 (7th Cir. 2025), *vacated and reh'g granted,*
   2025 WL 1794428 (7th Cir. June 30, 2025), *appeal dismissed,*
   No. 23-2568 (7th Cir. Aug. 26, 2025) ........................................ 3, 4, 8

*Doe v. Luzerne Cty.,*
   660 F.3d 169 (3d Cir. 2011) ............................................................... 13

*Doe v. Univ. of Cincinnati,*
   872 F.3d 393 (6th Cir. 2017) .............................................................. 17

*Elrod v. Burns,*
   427 U.S. 347 (1976) ............................................................................. 16

*Ezell v. City of Chicago,*
   651 F.3d 684 (7th Cir. 2011) ........................................... 11, 12, 14, 15

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.,*
   549 F.3d 1079 (7th Cir. 2008) ........................................................... 19

*Grimm v. Gloucester Cnty. Sch. Bd.,*
   972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020) ...................... 8

*Joelner v. Vill. of Washington Park, Illinois*,
  378 F.3d 613 (7th Cir. 2004) ................................................ 20

*Kent v. Johnson*,
  821 F.2d 1220 (6th Cir. 1987) .............................................. 14

*League of Women Voters of N. Carolina v. North Carolina*,
  769 F.3d 224 (4th Cir. 2014) ............................................... 20

*Mississippi Univ. for Women v. Hogan*,
  458 U.S. 718 (1982) ............................................................ 18

*Nken v. Holder*,
  556 U.S. 418 (2009) ....................................................... 19, 25

*Poe v. Leonard*,
  282 F.3d 123 (2d Cir. 2002) ................................................. 14

*Roland Mach. Co. v. Dresser Indus., Inc.*,
  749 F.2d 380 (7th Cir. 1984) .............................................. 19

*United States v. Virginia*,
  518 U.S. 515 (1996) ............................................................ 18

*Univ. of Tex. v. Camenisch*,
  451 U.S. 390 (1981) ............................................................ 19

*Whitaker ex rel. Whitaker v. Kenosha Unified School District No. 1 Board of Education*,
  858 F.3d 1034 (7th Cir. 2017) ..................................... *passim*

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .............................................................. 11

*York v. Story*,
  324 F.2d 450 (9th Cir. 1963) .............................................. 13

**Statutes**

20 U.S.C. § 1686 .................................................................. 6

**Regulations**

34 C.F.R. § 106.33 ................................................................................................ 6

# INTRODUCTION

Defendants' response confirms that this appeal turns on a single, dispositive legal error. The district court denied preliminary injunctive relief on the premise that a student's self-declared gender preference—untethered to any objective criteria, consistency, or factual findings—suffices to defeat plaintiffs' Equal Protection and Title IX claims as a matter of law. That premise is incorrect, and it infected every stage of the court's preliminary-injunction analysis.

Nothing in binding Seventh Circuit precedent requires schools to abandon sex-segregated intimate facilities. Nothing authorizes a policy that permits biological males to access girls' restrooms, locker rooms, changing rooms, and showers based solely on a unilateral declaration, while shifting the full burden of accommodation onto female students. And nothing permits a court to treat a contested label as legally dispositive without factual inquiry.

This appeal does not ask the Court to reject or narrow its prior decisions. To the contrary, plaintiffs' position fits comfortably within them. The cases defendants invoke recognized narrow, fact-specific exceptions in circumstances involving consistent, enduring, and medically supported gender identities, evaluated on concrete factual records. This case presents the opposite posture: no criteria, no

findings, no safeguards, and minors in sex-segregated spaces where privacy interests are at their apex.

The procedural posture heightens the error. Since plaintiffs filed their opening brief in this appeal, the district court has issued an order staying discovery, forestalling all factual development. Preliminary-injunction denials are often sustained on the premise that the case can proceed expeditiously on the merits. Here, that premise is lacking. Unless this Court grants interim relief or orders targeted factfinding, the challenged policy will remain in place while the record stays frozen, precluding any meaningful opportunity to examine the policy's criteria and effects before the school year ends, the named plaintiff graduates, and the case becomes moot. In short, absent interim relief, a frozen record and time-limited injury would combine to foreclose judicial review in this case altogether.

The Court need not resolve every underlying question to reverse. It need only hold that the district court applied the wrong legal framework—by treating self-declared gender preference as dispositive, disregarding established privacy interests in sex-segregated spaces, and relying on non-binding guidance to dilute federal rights—and remand for reconsideration under the correct standards. At a minimum, if the Court concludes that further factual development is required, it should vacate and

remand with instructions to conduct limited factfinding necessary to apply this Court's precedent under the proper legal framework.

## ARGUMENT

### I. Defendants Misstate Controlling Seventh Circuit Precedent.

Defendants' response rests on a fundamental mischaracterization of controlling Seventh Circuit precedent. Throughout their brief, defendants assert that this Court has already resolved the legality of policies permitting cross-sex access to intimate facilities and that those decisions compel affirmance here. (Def. Br. at 9–33). That assertion is incorrect. Properly understood, the governing cases neither mandate the policy defendants defend nor foreclose plaintiffs' Equal Protection or Title IX claims at the preliminary-injunction stage.

### A. *With Mukwonago Vacated, Only Whitaker and Martinsville Are Binding—and Neither Requires Denying Preliminary Injunctive Relief Here.*

Defendants contend that this Court's precedent forecloses plaintiffs' claims. That contention overstates what this Court has held. The binding Seventh Circuit decisions on which defendants rely—*Whitaker ex rel. Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034 (7th Cir. 2017), and *A.C. by M.C. v. Metropolitan School District of Martinsville*, 75 F.4th 760 (7th Cir. 2023)—recognized narrow, fact-specific exceptions on developed records; they did not announce a general

rule requiring schools to permit cross-sex access to intimate facilities based solely on self-declared preferences.

This Court vacated its decision in *D.P. by A.B. v. Mukwonago Area School District*, 140 F.4th 826 (7th Cir. 2025), *vacated and reh'g granted*, 2025 WL 1794428 (7th Cir. June 30, 2025), *appeal dismissed*, No. 23-2568 (7th Cir. Aug. 26, 2025), which is no longer binding. With *Mukwonago* out of the picture, the only controlling Circuit authority addressing cross-sex access to sex-segregated facilities in public schools consists of *Whitaker* and *Martinsville*.

Neither case announced a general rule requiring schools to abandon sex-segregated bathrooms, locker rooms, changing rooms, or showers. Nor did either hold—under the Equal Protection Clause or Title IX—that a school may permit biological males to access female-only intimate spaces based solely on self-assertion. Defendants nonetheless contend that plaintiffs' position is foreclosed by those decisions. (Def. Br. at 14–17). That contention misconstrues the holdings as reaching far wider than the Court itself articulated.

Both *Whitaker* and *Martinsville* addressed challenges to exclusionary policies, not policies that eliminate objective criteria altogether. And each decision was expressly grounded in highly specific factual records. Defendants' effort to treat them as categorical mandates collapses distinctions the Court itself emphasized.

B. *Whitaker and Martinsville Presuppose the Legitimacy of Sex-Segregated Intimate Spaces.*

Defendants' brief also obscures a critical point: *Whitaker* and *Martinsville* were decided against a settled constitutional and statutory backdrop recognizing the legitimacy of sex-segregated intimate facilities in public schools.

At no point did either decision suggest that sex-segregated bathrooms, locker rooms, or changing facilities are presumptively unlawful. To the contrary, those cases presupposed that such facilities are generally permissible responses to biological differences between males and females and to the acute bodily-privacy interests those differences implicate—particularly for minors. Defendants' attempt to frame plaintiffs' claims as an attack on an "inclusive" policy is therefore a straw man. (Def. Br. at 13 (confoundingly characterizing plaintiffs' claims as "actively" ignoring that cross-sex accommodations "could not be on the basis of sex")).

That backdrop matters for both claims here. Plaintiffs' Equal Protection claim rests on the unremarkable proposition that sex-segregated intimate spaces are a lawful—and often necessary—means of protecting female students' bodily privacy. *See Adams ex rel. Kasper v. St. Johns Cnty. Sch. Bd.*, 57 F.4th 791, 805 (11th Cir. 2022) (en banc) (observing "that the privacy afforded by sex-separated bathrooms has been widely recognized throughout American history and jurisprudence").

Title IX reflects the same understanding. Congress expressly preserved sex separation in intimate settings, and the Department of Education's regulations authorize separate toilet, locker room, and shower facilities on the basis of sex, provided they are comparable. *See* 20 U.S.C. § 1686 ("Notwithstanding anything to the contrary contained in this chapter, nothing contained herein shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes."); 34 C.F.R. § 106.33 (permitting federally funded schools to "provide separate toilet, locker room, and shower facilities on the basis of sex," so long as the facilities "provided for students of one sex . . . [are] comparable to such facilities provided for students of the other sex"). Defendants never grapple with this statutory and regulatory structure; instead, they assert that Title IX compels schools to withdraw sex-based protections whenever a student declares a gender preference. (Def. Br. at 14–17 (arguing Title IX must yield to cross-sex access based on self-declared preferences)). Nothing in the statute or regulations supports that claim.

Importantly, neither *Whitaker* nor *Martinsville* purported to reinterpret Title IX's text or to hold that sex-segregated facilities are inherently suspect. Those decisions operate within—rather than against—the statutory framework defendants now seek to invert.

C.   *Whitaker and Martinsville Recognize Narrow, Fact-Specific Exceptions—Not a General Rule.*

Defendants' most significant error is their failure to engage the factual predicates that drove the outcomes in *Whitaker* and *Martinsville*. Instead, they quote generalized language while ignoring the concrete circumstances that made the accommodations at issue legally tolerable. (Def. Br. at 17–19).

In *Whitaker*, 858 F.3d at 1040–42, the Court emphasized objective, stabilizing facts: a consistent and enduring gender identity, a medical diagnosis of gender dysphoria, ongoing hormone treatment, legal name and gender-marker changes, and years of comprehensive social transition. Those facts were not incidental. They ensured that the accommodation was stable, limited, and not susceptible to opportunistic or inconsistent claims. The Court's Equal Protection and Title IX analyses were expressly tethered to that record. *Martinsville*, 75 F.4th at 764–66, likewise involved biological female students with persistent, medically supported male gender identities and no allegation that the accommodations sought undermined other students' privacy in intimate spaces.

Defendants' brief omits those limitations, instead suggesting that *Whitaker* and *Martinsville* broadly authorize cross-sex access policies. (Def. Br. at 17–19 (insisting that neither decision would tolerate any "objective criteria" for granting cross-sex access)). That is a palpable misreading of the two decisions.

Crucially, in *Whitaker* and *Martinsville*, this Court did not hold that sex-segregated facilities are suspect, nor that schools must permit biological males to access girls' facilities. It evaluated a narrow exclusionary policy in light of a highly specific factual record. Defendants' reading would transform that fact-bound analysis into a sweeping mandate—something the Court plainly did not do.

Indeed, with *Mukwonago* no longer good law, no controlling Seventh Circuit case requires that a biological male student, even one who "consistently, persistently, and insistently" identifies as a girl, *Adams*, 57 F.4th at 807 (cleaned up), be granted access to a school's female-only facilities. It is an unremarkable proposition that female students are more vulnerable to "intrusion on bodily privacy" than male students in nominally sex-segregated spaces. *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 623 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (Wynn, J., concurring).

D.   *This Case Falls Well Outside the Narrow Bounds of Whitaker and Martinsville.*

Even if *Whitaker* and *Martinsville* could be read to apply to a male student seeking access to a school's female-only facilities, the record alleged here places this case well outside those narrow holdings.

Plaintiffs allege that defendants' policy permits biological male students to access female-only restrooms, locker rooms, changing rooms, and showers based solely on a unilateral, unverified self-declaration—without medical documentation, without

any showing of consistency over time, and without any requirement that the student present or live as female in other contexts. Defendants do not dispute that characterization of their policy. (Def. Br. at 18 (declaring, bewilderingly, that any "objective[-]criteria requirement would force the [School] District to navigate a legal minefield rife with unconstitutional criteria")).

Moreover, the policy applies to high school students during a period of physical development when privacy expectations are at their apex, and it shifts the full burden of accommodation onto female students. (Def. Br. at 24–26 (pointing to alternative accommodations for girls)). None of the stabilizing features present in *Whitaker* or *Martinsville* exists here.

Defendants' insistence that precedent nonetheless compels affirmance therefore fails. At most, *Whitaker* and *Martinsville* establish that, in narrow circumstances and on specific factual records, limited accommodations may be permissible. They do not require—and do not authorize—the unbounded policy defendants defend.

## II. The District Court's Legal Errors Require Reversal.

Defendants repeatedly characterize this appeal as a disagreement with the district court's factfinding and urge deference on that basis. (Def. Br. at 20–21 (arguing absence of "clear error," by pointing to, among other things, and quite

puzzlingly, "testimony in the oral argument")). That framing misstates the nature of the error. Plaintiffs do not ask this Court to reweigh evidence. They contend that the district court applied the wrong legal framework, relied on legally irrelevant considerations, and treated a contested label as dispositive. Each constitutes an abuse of discretion warranting reversal.

A.     *Treating a Conclusory Label as Dispositive Is Legal Error.*

The district court's central mistake was legal, not factual: it treated the assertion that a student is "transgender" as outcome-determinative, without requiring objective criteria or factual findings about how defendants' policy operates in practice. Defendants defend that approach by asserting that no such inquiry is required under governing precedent. (Def. Br. at 19 (arguing that self-declaration alone suffices because any "'objective[-]criteria' requirement is not legally sound")). But nothing in this Court's cases authorizes courts to substitute labels for analysis.

When constitutional and statutory claims turn on how a policy functions, courts must examine the policy's criteria and effects. Here, plaintiffs alleged—and defendants do not dispute—that access to female-only intimate spaces is granted based solely on a unilateral declaration, without medical documentation, consistency over time, or any requirement that the student present or live as female in other contexts.

10

By declining to assess those features, the district court short-circuited the Equal Protection and Title IX analyses.

Defendants attempt to recast this as a permissible credibility determination. (Def. Br. at 19–22 (asserting that district court made factual findings)). But the court made no findings about criteria, safeguards, or consistency. Accepting a conclusory label in place of legal analysis is itself reversible error. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008) (criticizing the district court that granted a preliminary injunction for addressing relevant "considerations in only a cursory fashion" and failing to apply the proper legal standards). Affirmance would allow a school district to eliminate sex-based privacy protections based on nothing more than an unreviewable assertion, without criteria, findings, or record development.

Especially instructive in this regard is *Ezell v. City of Chicago*, 651 F.3d 684, 689–90 (7th Cir. 2011), in which this Court reversed the district court for failing to grant a preliminary injunction against a City of Chicago ordinance that plaintiffs in that case alleged "severely burdens the core Second Amendment right to possess firearms for self-defense because it conditions possession on range training but simultaneously forbids range training everywhere in the city." This Court faulted the district court for embracing the City's conclusory assertion of "minimal harm" instead of performing the requisite factual analysis: "The district court got off on the wrong foot by accepting

the City's argument that its ban on firing ranges causes only minimal harm to the plaintiffs." *Id.* at 694.

Likewise, here, even though plaintiffs squarely placed the issue in dispute (Pl.'s Op. Br. at 12–20), the district court, at the very outset, adopted without inquiry defendants' conclusory assertion that the male student at issue was "transgender." (ECF 27, Mem. Op. at 2). Worse, even though in her unrebutted declaration, named plaintiff F.F. described the student as "an obvious male," who "exhibited no outward appearance or indication of presenting as female" (ECF 12, Ex. 1, F.F. Decl. ¶ 3), the district court insisted that F.F. "*observed* a transgender student." (ECF 27, Mem. Op. at 2 (emphasis added)).

B.    *Reliance on Non-Binding Guidance Cannot Override Federal Law.*

The district court compounded that error by relying on non-binding state guidance to justify defendants' policy. (Mem. Op. at 13, 15). Defendants endorse that reliance, arguing that schools are entitled to follow state agency guidance without further scrutiny. (Def. Br. at 34–35). That argument misunderstands the role of guidance in constitutional and statutory analysis.

Guidance documents do not override federal constitutional protections or statutory text. Where Title IX expressly preserves sex separation in intimate facilities, and where the Equal Protection Clause permits sex-segregated spaces to protect bodily

privacy, non-binding guidance cannot be used to dilute those protections or to foreclose constitutional claims. Courts must evaluate challenged policies against governing law, not defer to guidance that lacks the force of law.

By treating guidance as dispositive, the district court effectively inverted the hierarchy of authority. That legal error independently warrants reversal.

C. *Mischaracterizing Privacy Interests Skewed the Analysis.*

The district court further erred by mischaracterizing plaintiffs' asserted harms as rooted in sexual interest rather than bodily privacy. Defendants repeat that mischaracterization, suggesting that plaintiffs' concerns reflect discomfort or subjective offense rather than legally cognizable injury. (Def. Br. at 14–17 (minimizing privacy interests)).

That framing is incorrect. Courts have long recognized that privacy interests in intimate spaces protect against involuntary exposure of one's body, not merely against sexualized conduct. *See, e.g., York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963) ("We cannot conceive of a more basic subject of privacy than the naked body."); *see also Doe v. Luzerne Cty.*, 660 F.3d 169, 176–77 (3d Cir. 2011) (recognizing that an individual has "a constitutionally protected privacy interest in his or her partially clothed body" and that this "reasonable expectation of privacy" exists "particularly while in the

presence of members of the opposite sex"); *Poe v. Leonard*, 282 F.3d 123, 138 (2d Cir. 2002) (same).

Grounded in dignity, as distinct from sexuality, there is "a fundamental constitutional right to be free from forced exposure of one's person to strangers of the opposite sex when not reasonably necessary for some legitimate, overriding reason." *Kent v. Johnson*, 821 F.2d 1220, 1226 (6th Cir. 1987). Those interests are especially acute for minors in school locker rooms, restrooms, and changing areas. Indeed, "teenagers have an inherent personal dignity, a sense of decency and self-respect, and a sensitivity about their bodily privacy that are at the core of their personal liberty." *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 499 (6th Cir. 2008).

By collapsing bodily privacy into sexual interest, the district court discounted the nature of the harm and skewed its assessment of irreparable injury and equities. This mischaracterization matters because it permeated the court's analysis. Once the harm is dismissed as subjective discomfort, denial of interim relief appears costless. But when properly understood as loss of bodily privacy in intimate settings, the harm is concrete and irreparable.

D.    *These Errors Infected the Entire Preliminary-Injunction Analysis.*

Defendants urge this Court to affirm on the ground that any error in the district court's getting off "the wrong foot," *Ezell*, 651 F.3d at 694, by affixing the conclusory

label of "transgender" on the male student at issue, would be harmless: "[T]he actual transgender status of the student was not relevant to the District Court's analysis of the merits of Plaintiff[s'] claims." (Def. Br. at 20). That argument fails because, as in *Ezell*, the district court's initial legal error infected every stage of its subsequent analysis. *See Ezell*, 651 F.3d at 694 (concluding that the district court's foundational mischaracterization of the plaintiffs' injury caused it to "fundamentally misunderstand[] the form of this claim" and "to make legal errors on several fronts").

Similarly, here, the district court assessed likelihood of success under the wrong legal framework, discounted irreparable harm based on a mischaracterization of privacy interests, and skewed the balance of equities calculus by assuming that plaintiffs' injuries were minimal and speculative. Where a district court's analysis of the preliminary-injunction factors rests on an erroneous legal premise, deference does not apply. *See Ezell*, 651 F.3d at 698 (declining to defer to "the district court's evaluation of irreparable harm" because it rested on "a profoundly mistaken assumption").

This Court need not decide the ultimate merits to reverse. It need only hold that the district court applied the wrong legal standards and remand for reconsideration under the correct framework. That narrow disposition preserves precedent while correcting the abuse of discretion presented here.

**III.  Irreparable Harm and the Balance of Equities Favor Interim Relief.**

Defendants argue that plaintiffs failed to establish irreparable harm and that any injury can be remedied later by "monetary damages." (Def. Br. at 28–29). That contention rests on a mischaracterization of both the nature of the injury and the procedural posture of this case. Properly understood, plaintiffs face concrete, irreparable harm now, and the equities favor interim relief.

A.  *Loss of Bodily Privacy in Intimate Spaces Is Irreparable.*

As noted above, courts have long recognized a constitutionally protected right against the loss of bodily privacy in intimate settings. As with any constitutional right, a violation, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Once a student is exposed to the presence of members of the opposite sex in restrooms, locker rooms, changing rooms, or showers, that invasion cannot be undone. Plaintiffs need not endure repeated violations before relief becomes available, particularly where minors are involved and the harm arises in spaces specifically designated to protect privacy.

Defendants attempt to recast plaintiffs' injuries as subjective discomfort or offense. (Def. Br. at 28–29 (characterizing harm as emotional and compensable)). But the asserted harm here is not abstract unease. It is the loss of sex-based bodily privacy in spaces where students are partially or fully undressed. Because "constitutional rights are threatened or impaired, irreparable injury is presumed," and "[d]efendants'

16

characterization of . . . [plaintiffs'] injury as speculative or unsubstantiated does not rebut that presumption." *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 407 (6th Cir. 2017) (internal quotation marks and citations omitted).

Defendants also argue that plaintiffs' concerns are overstated because no evidence was adduced that the "student in question was guilty of any misconduct." (Def. Br. at 16). That argument misunderstands the right at issue. Privacy in intimate spaces protects against involuntary exposure itself, not merely against sexualized conduct. The harm occurs at the moment of compelled exposure, regardless of intent.

B.     *Alternative Accommodations Do Not Cure the Harm.*

Defendants further contend that any harm is mitigated because female students may use alternative facilities or adjust their schedules. (Def. Br. at 24–26). That argument fails as a matter of equity.

Equal protection does not permit the state to burden one class of students in order to accommodate another, particularly where the burden falls on minors and concerns bodily privacy. Requiring female students to avoid facilities, wait for access, or relocate to alternative spaces shifts the full cost of defendants' policy onto them. Courts have repeatedly rejected the notion that relegating one group to separate or inferior accommodations cures a constitutional injury. *See, e.g., United States v. Virginia*,

518 U.S. 515, 547 (1996) (holding that any remedy "must closely fit the constitutional violation"); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 728 (1982) (same).

Nor does the availability of alternatives make the harm reparable. The injury is the loss of equal access to sex-segregated facilities on the same terms as before, not merely inconvenience. Once those protections are withdrawn, the harm accrues immediately and continuously.

C.    *Procedural Stasis Magnifies the Irreparable Harm.*

The procedural posture of this case underscores why interim relief is necessary. After denying preliminary injunctive relief, and since plaintiffs filed their opening brief in this appeal, the district court has also stayed discovery. (ECF 44). Without even affording plaintiffs the opportunity to file a written response, the district court granted defendants' motion to stay discovery pending the disposition of their motion to dismiss. (*Id.*). As a result, plaintiffs remain subject to the challenged policy without relief and without any mechanism to develop the factual record while the school year continues to run.

Perplexingly, in granting the stay, the district court denied "that there would be prejudice to [p]aintiff[s]." (*Id.*). The named plaintiff, F.F., will graduate from Bolingbrook High School this spring. (Pls.' Op. Br. at 4). Unless the district court

certifies the class before then, the case will become moot at that time, and plaintiffs' injuries will no longer be redressable.

Preliminary-injunction denials are often sustained on the premise that the case can proceed expeditiously on the merits and that any error can be corrected later. *Compare Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (reversing grant of preliminary injunction after considering "whether the plaintiff will be made whole if he prevails on the merits") *with Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1090 (7th Cir. 2008) (reversing denial of preliminary injunction because, among other reasons, "a remedy may come too late to save plaintiff's business" (cleaned up)), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (explaining that "the findings of fact and conclusions of law made by a court granting [or denying] a preliminary injunction are not binding at trial on the merits"). Defendants rely impliedly on that assumption in contending that "alleged harms could be adequately compensated monetarily." (Def. Br. at 30). But that premise does not hold where discovery is stayed and the harm is time-limited.

The combination of denied interim relief and procedural stasis creates a substantial risk that meaningful judicial review will be foreclosed by the passage of time. Plaintiffs cannot develop the record defendants insist is necessary, yet they are

denied relief on the ground that the record is undeveloped. In that posture, delay itself becomes the irreparable harm.

Courts have recognized that where the practical effect of denying interim relief is to deny any realistic opportunity for adjudication before the harm expires, irreparable injury is established and equitable considerations favor preserving the status quo pending review. *See, e.g.*, *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) (deeming "restrictions on fundamental voting rights irreparable injury" because "once the election occurs, there can be no do-over and no redress"); *see also Joelner v. Vill. of Washington Park, Illinois*, 378 F.3d 613, 628 (7th Cir. 2004) (enjoining collection of an enhanced licensing fee on the ground that if the business cannot afford such a hefty fee, it "would be forced to shut down").

D.    *The Balance of Equities Favors Preserving the Status Quo.*

Defendants assert that interim relief would impose undue burdens on the School District and harm other students. (Def. Br. at 32–35). That assertion is overstated.

Plaintiffs do not seek to prohibit reasonable accommodations. They seek only to preserve existing sex-based privacy protections while the legality of defendants' policy is adjudicated. Maintaining the status quo during litigation imposes minimal

administrative burden, particularly compared to the ongoing loss of bodily privacy plaintiffs face absent relief.

By contrast, denying interim relief forces female students to bear the full burden of defendants' policy throughout the litigation, even as discovery is stayed and the school year progresses. Equity does not favor placing that burden on plaintiffs while defendants are insulated from judicial review by delay.

Defendants' suggestion that interim relief would be disruptive also ignores that any injunction here would be temporary and reversible. Preserving the status quo pending adjudication ensures that no party suffers irreversible harm while the courts determine the policy's legality.

E.    *Irreparable Harm and Equities Are Closely Linked Here.*

Finally, this is a case where irreparable harm and equitable considerations are inseparable. The harm plaintiffs face is not merely substantive but procedural: the loss of bodily privacy now, coupled with the risk that delay will preclude any meaningful adjudication later.

Where interim relief is necessary to preserve both rights and review, the balance of equities favors granting it. Defendants' attempt to minimize that reality rests on assumptions about future process that the current procedural posture does not support.

**IV.  The Public Interest and a Narrow Remedy Favor Interim Relief.**

Defendants contend that the public interest weighs against interim relief because their policy promotes inclusion and administrative flexibility. (Def. Br. at 35 (contending that "neither the [E]qual [P]rotection [C]lause nor Title IX prohibit[s] an inclusive policy like the one endorsed by the [School] District")). That framing again overstates what plaintiffs seek and understates the public interests at stake. Properly understood, the public interest favors preserving constitutional protections, statutory guarantees, and meaningful judicial review while the legality of defendants' policy is adjudicated.

A.    *The Public Interest Favors Enforcement of Constitutional and Statutory Rights.*

It is axiomatic that the public interest is served by the protection of constitutional rights. *See, e.g., Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 589–90 (7th Cir. 2012) (observing that when it comes to unconstitutional policies, "the balance of harms normally favors granting preliminary injunctive relief"). Where plaintiffs demonstrate a likelihood of success on claims alleging violations of the Equal Protection Clause and Title IX, the public interest weighs in support of interim relief. That principle applies with particular force where the rights at issue concern bodily privacy in intimate settings for minors.

Defendants respond by asserting that any injunction would conflict with evolving understandings of gender identity and student well-being. (Def. Br. at 33–35

(invoking inclusion and student support)). But courts do not balance constitutional protections against policy preferences. The public interest does not favor insulating contested policies from review, particularly where those policies withdraw long-recognized privacy protections without clear statutory authorization.

Nor does the public interest favor a regime in which one group of students must relinquish sex-based protections to accommodate another, absent objective criteria or safeguards. Preserving the legal status quo while courts determine whether defendants' policy is lawful serves the public interest in neutrality, fairness, and the rule of law.

B.    *Plaintiffs Seek Guardrails, Not Prohibition.*

Defendants repeatedly suggest that plaintiffs seek to prohibit accommodations for transgender students. (Def. Br. at 33 (asserting that "granting . . . [the] proposed preliminary injunction would likely violate the rights of every transgender student in the [School] District")). That characterization is incorrect.

Plaintiffs do not ask this Court to bar reasonable accommodations. They ask only that access to sex-segregated intimate spaces be governed by objective criteria and safeguards, as in the cases defendants cite. Requiring guardrails does not deny accommodations; it ensures that any accommodation is administered in a manner consistent with constitutional and statutory protections and that it does not impose unbounded burdens on other students.

Defendants' response is a head-scratcher. They concede that *Martinsville*, 75 F.4th at 773, "le[ft] the door open to reasonable measures taken by the school districts to ensure that a student genuinely needs the requested accommodations," yet, elsewhere, maintain that plaintiffs' proposed guardrails have "already been adjudicated as unconstitutional" by *Martinsville*. (Def. Br. at 18–19, 33). Defendants do not attempt to reconcile these conflicting propositions.

An injunction preserving existing sex-based privacy protections during litigation would leave schools free to continue providing alternative accommodations and support. It would simply prevent defendants from implementing a policy that eliminates all objective limits while the courts assess its legality.

C.     *Preserving Judicial Review Is Itself a Compelling Public Interest.*

The public interest also includes ensuring that courts are able to adjudicate constitutional claims on a meaningful record. Defendants urge the Court to deny interim relief on the premise that any proven harms can be compensated later through an award of monetary damages. (Def. Br. at 28–29). But where discovery is stayed and the harm is time-limited, that premise fails.

Allowing procedural stasis to defeat review undermines public confidence in the judicial process. The public interest is not served when litigants are left without relief while time-sensitive injuries accrue and the opportunity for adjudication slips

away. Interim relief here would preserve the Court's ability to render an effective judgment, whatever the ultimate outcome. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (noting the "substantial overlap" between legal standards governing preliminary injunctive relief and a stay pending appeal and describing the purpose of each as preserving the status quo to ensure meaningful judicial review).

D.    *A Narrow Remedy Avoids Disruption and Preserves Institutional Interests.*

Finally, the remedy plaintiffs seek is modest. This Court need not issue a broad or permanent injunction. It may reverse and remand with instructions to reconsider interim relief under the correct legal framework, or it may direct narrowly tailored relief preserving the status quo pending adjudication.

Such a remedy minimizes disruption, respects institutional competence, and avoids prejudging the merits. Defendants' suggestion that any injunction would cause sweeping harm ignores the temporary and reversible nature of preliminary relief.

In short, the public interest favors maintaining established privacy protections, safeguarding constitutional rights, and preserving meaningful judicial review through a narrow and carefully tailored interim remedy.

## CONCLUSION

The district court denied preliminary injunctive relief based on a mistaken legal premise: that a student's unilateral assertion of gender preference, untethered to any objective criteria or factual findings, suffices to defeat plaintiffs' Equal Protection and

Title IX claims as a matter of law. That premise finds no support in this Court's precedent, the Constitution, or Title IX, and it distorted the court's analysis of likelihood of success, irreparable harm, and the balance of equities—particularly in light of the discovery stay and the time-limited nature of the harm.

This Court need only hold that the district court applied the wrong legal framework and vacate the order denying preliminary relief, remanding for further proceedings consistent with this Court's opinion. On remand, the district court may grant appropriate interim relief preserving existing sex-based privacy protections pending adjudication on the merits.

At a minimum, if the Court concludes that the present record is insufficient, it should vacate and remand with instructions that the district court conduct a limited evidentiary hearing to determine what criteria the School District applies in granting cross-sex access to intimate facilities. Resolution of that factual issue is necessary to any proper application of *Whitaker* or *Martinsville* and cannot be assumed without findings. Such a limited remand would preserve this Court's precedent, respect institutional competence, and ensure meaningful judicial review of plaintiffs' claims.

Dated: December 26, 2025                    Respectfully submitted,

/s/ Ajay Gupta
Ajay Gupta
The Law Offices of Ajay Gupta
2849 Bond Circle
Naperville, Illinois 60563
(630) 854-7194
ajguptaemail@gmail.com

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for plaintiffs-appellants, furnishes the following in compliance with Federal Rule of Appellate Procedure 32(a)(7):

1.      I hereby certify that the foregoing brief complies with the requirements set out in Federal Rule of Appellate Procedure 32(a)(7) for a brief prepared in a proportionally spaced typeface.

2.      The foregoing brief has been prepared in a proportionally spaced typeface using Microsoft Word, Goudy Old Style, 14 point.

3.      Exclusive of the table of contents, table of citations, and this certificate of compliance, the foregoing brief contains 5,480 words.

4.      I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and a copy of the word or line printout.

/s/ Ajay Gupta
Ajay Gupta
The Law Offices of Ajay Gupta
2849 Bond Circle
Naperville, Illinois 60563
(630) 854-7194
ajguptaemail@gmail.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I certify that, on December 26, 2025, I electronically filed this Brief and Required Short Appendix of Plaintiffs-Appellants with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Ajay Gupta</u>
Ajay Gupta
The Law Offices of Ajay Gupta
2849 Bond Circle
Naperville, Illinois 60563
(630) 854-7194
ajguptaemail@gmail.com

*Counsel for Plaintiffs-Appellants*