# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| F.F. *et al.*,<br><br>　　　Plaintiffs-Appellants,<br><br>　　　v.<br><br>VALLEY VIEW COMMUNITY<br>UNIT SCHOOL DISTRICT 365U<br>*et al.*,<br><br>　　　Defendants-Appellees. | No. 25-2735 |

## PLAINTIFFS-APPELLANTS' RESPONSE TO
## COURT'S ORDER OF MAY 12, 2026

Plaintiffs-appellants, F.F. and the proposed class, by and through undersigned counsel, respectfully respond to the Court's order of May 12, 2026 (Doc. 29, Ord.), as follows:

1.　　In its order, the Court further asked "whether F.F. has turned 18." (*Id.*). If so, the Court inquired "whether F.F. wishes to proceed under her real name and represent herself in this litigation." (*Id.*). If she does not, the Court sought an explanation as to "how her father retains capacity to sue on her behalf." (*Id.*).

2.　　Named plaintiff F.F. turned 18 on October 10, 2025.

3.　　Because F.F. is now an adult in the eyes of the law, she is the appropriate named plaintiff rather than her father.

1

4.    Further, because F.F. is no longer a minor, Federal Rule of Civil Procedure 5.2(a)(3), which requires that a minor litigant's full name be redacted and replaced by initials, no longer applies on a prospective basis.

5.    F.F., however, wishes to continue proceeding under her initials instead of her full name because doing so is necessary to prevent serious harm to her. Concurrent with this filing, F.F. has filed a motion in the district court seeking such relief, accompanied by a sworn declaration by F.F. (Dist. Ct. ECF 55). A copy of this motion is attached hereto as Exhibit A. Counsel for defendants-appellees have indicated that they intend to oppose this motion.

6.    "Depending on the nature and circumstances of the case, minors who reach adulthood during the course of litigation may be able to justify such treatment as a result of their continuing interests in avoiding the embarrassment, stigma, and potential for retaliation that can attend public disclosure." *Ricketts v. Titusville Area Sch. Dist.*, 150 F.4th 634, 636 (3d Cir. 2025) (collecting cases); *see also Students for Fair Admissions v. Trs. of Est. of Bishop*, No. CV 25-00450 MWJS-RT, 2026 WL 937289, at *16 (D. Haw. Apr. 7, 2026) (allowing student who turned 18 during the course of litigation to use only initials instead of full name); *DiPietro v. Archbishop Wood High Sch.*, 711 F. Supp. 3d 488, 491 (E.D. Pa. 2024) (*sua sponte* deciding to continue using only the student's initials even after student turned 18).

7.    The Court's order of May 12, 2026, also asked "whether F.F. is still enrolled at Bolingbrook High School, and if so, provide us with her expected graduation date and an explanation as to why this case is not moot." (Ord.)

8.    F.F. graduated from Bolingbrook High School (School) on May 18, 2026.

9.    F.F.'s graduation does not render this case moot. This case was filed as a class action. (Dist. Ct. ECF 1, Compl. ¶¶ 28–33 (class allegations)). A motion for certification of the class (Dist. Ct. ECF 52, Mot.) is pending before the district court. (Dist. Ct. ECF 54 (order entering Mot.)).

10.    The proposed class consists of all female students at the School, each of whom has been or will be subjected to the policy instituted at the School by Valley View Community Unit School District 365U (School District), pursuant to which biological male students are granted access to the School's female-only intimate spaces, including restrooms, locker rooms, changing rooms, and showers, based solely on unverified self-declarations, thereby compromising the female students' privacy and safety. (Compl. ¶ 28; Mot. 1).

11.    Because the claims presented in the district court and on this appeal are "inherently transitory," F.F.'s graduation does not render this appeal moot under the "relation back" doctrine. "Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the

proposed representative's individual interest expires." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980). "In such cases, the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991).

12.    In the context of public school education, graduation or other changes in enrollment status will inevitably cause individual claims to expire before class certification can be litigated. In such circumstances, the relation-back doctrine preserves the Court's ability to adjudicate the class claims. *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (deciding that "termination of a class representative's claim does not moot the claims of the unnamed members of the class" where "the constant existence of a class of persons suffering the deprivation is certain").

13.    The challenged School District policy affects a constantly rotating population of female students, and any individual student's claim will naturally expire upon graduation or transfer. Absent the relation-back doctrine, defendants-appellees could routinely moot such challenges simply by the passage of an academic year.

14.    Moreover, the absence of formal class certification does not bar the temporary classwide relief plaintiffs-appellants seek here—a preliminary injunction against the challenged School District policy. *A. A. R. P. v. Trump*, 605 U.S. 91, 98 (2025) (holding that "courts may issue temporary relief to a putative class"); *see also*

4

*O.B. v. Norwood*, 170 F. Supp. 3d 1186, 1200 (N.D. Ill. 2016), *aff'd*, 838 F.3d 837 (7th Cir. 2016) (finding that it was "unnecessary to certify, or even conditionally certify, Plaintiffs' proposed class," given that a district court may "use its general equity powers to order preliminary injunctive relief for the proposed class of plaintiffs" (cleaned up)).

WHEREFORE, plaintiffs-appellants respectfully ask that the Court resolve this appeal on its merits and by referring to named plaintiff F.F. only by her initials instead of her full name.

Pursuant to 28 U.S.C. §1746, undersigned counsel declares under penalty of perjury that all factual assertions in the foregoing made on personal knowledge are true and correct, and all such factual assertions made on information and belief are believed to be true and correct.

Dated: June 3, 2026                    Respectfully submitted,

                                        /s/ Ajay Gupta
                                        Ajay Gupta
                                        The Law Offices of Ajay Gupta
                                        2849 Bond Circle
                                        Naperville, Illinois 60563
                                        (630) 854-7194
                                        ajguptaemail@gmail.com

                                        *Counsel for Plaintiffs-Appellants*

5

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that this submission complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it was prepared in Times New Roman 14-point, a proportionally spaced font, and the submission complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 1,000 words, according to the word count of Microsoft Word.

/s/ Ajay Gupta
Ajay Gupta

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Ajay Gupta</u>
Ajay Gupta

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| F.F., a minor, by and through her next friend and father, JAMES ELLARD FISHER, individually, and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 1:25-cv-9112 |
| | ) | |
| v. | ) | Judge: Sharon Johnson Coleman |
| | ) | |
| VALLEY VIEW COMMUNITY UNIT SCHOOL DISTRICT 365U, DR. KEITH WOOD, in his official capacity as Superintendent of Schools for the Valley View Community Unit School District 365U, and DR. JASON PASCAVAGE, in his official capacity as Principal of Bolingbrook High School, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO CONTINUE PROCEEDING UNDER INITIALS**

Named Plaintiff F.F., by and through her undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 10(a) and Local Rules 5.8 and 26.2 for leave to continue to proceed in this action using her initials F.F. rather than her full name. In support of this Motion, Plaintiff states as follows:

## I.    INTRODUCTION

When this action began, named Plaintiff F.F. was a minor. (ECF 1, Compl.). Consequently, this action was brought on her behalf by her next friend and father, James Ellard Fisher. F.F. has since turned 18, making her the appropriate litigant rather than her father. Further, at the commencement of the action, pursuant to Federal Rule of Civil Procedure 5.2(a)(3), F.F.'s full name was redacted and replaced by her initials in all public filings. Because F.F. is now an adult in the eyes of the law, that rule no longer applies on a prospective basis.

1

Nonetheless, F.F. may be permitted to continue to use only her initials rather than her full name. "Depending on the nature and circumstances of the case, minors who reach adulthood during the course of litigation may be able to justify such treatment as a result of their continuing interests in avoiding the embarrassment, stigma, and potential for retaliation that can attend public disclosure." *Ricketts v. Titusville Area Sch. Dist.*, 150 F.4th 634, 636 (3d Cir. 2025) (collecting cases). For the reasons discussed below, such treatment is warranted here.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 10(a) requires that the caption of the complaint name all the parties. But courts, including the Seventh Circuit, have long recognized an exception allowing a plaintiff to proceed under a pseudonym in exceptional circumstances. *See Doe v. Blue Cross & Blue Shield United of Wis.,* 112 F.3d 869, 872 (7th Cir. 1997); *K.F.P. v. Dane Cnty.,* 110 F.3d 516, 519 (7th Cir. 1997).

"The presumption that parties' identities are public information, and the possible prejudice to the opposing party from concealment, can be rebutted by showing that the harm to the plaintiff . . . exceeds the likely harm from concealment." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004) (collecting cases). "The danger of retaliation is often a compelling ground for allowing a party to litigate anonymously." *Id.* (collecting cases).

In *Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710, 723–24 (7th Cir. 2011), *aff'd en banc in relevant part*, 687 F.3d 840, 842–43 (7th Cir. 2012), the Seventh Circuit affirmed the use of fictitious names by plaintiffs who proceeded against a public school district. The Court of Appeals sustained the district court's reliance on sworn declarations submitted by the plaintiffs in making a finding that they harbored legitimate fears of future retribution. *Id.; see also Students for Fair Admissions v. Trs. of Est. of Bishop*, No. CV 25-00450 MWJS-RT, 2026 WL 937289, at *16 (D. Haw. Apr. 7, 2026) (allowing student who turned 18 during the course of litigation to use only

2

initials instead of full name)*; DiPietro v. Archbishop Wood High Sch.*, 711 F. Supp. 3d 488, 491 (E.D. Pa. 2024) *(sua sponte* deciding to continue using only the student's initials even after student turned 18).

## III.     ARGUMENT

This action challenges the policies, practices, and customs of Defendant Valley View Community Unit School District 365U in Illinois (School District) that permit biological male students at Bolingbrook High School to access female-only intimate spaces—restrooms, locker rooms, changing rooms, and showers—based solely on unilateral, unverified self-declarations, without any objective criteria or safeguards, thus requiring female students to surrender the sex-based privacy protections long recognized as legitimate and lawful. (Compl. ¶¶ 34–78). The claims involve highly sensitive and personal matters concerning the physical and mental health and psychological well-being of named Plaintiff F.F. Because of the intensely private nature of these issues and the significant risk of harassment, retaliation, and stigma to F.F., she respectfully requests leave to continue to proceed under her initials rather than her full name. Finally, to maintain anonymity, F.F. requests leave to file under seal any required document containing her full name.

In a sworn declaration submitted earlier in this litigation, F.F. averred, "I do not want to proceed in court using my full name because I fear retaliation and value my privacy." (Doc. 12, Ex.1, F.F. Decl. ¶ 14). F.F. elaborates on those fears in another sworn declaration accompanying this motion, a redacted version of which is attached hereto as Exhibit 1. By this Motion, F.F. seeks leave to file the unredacted version under seal.

Thus, consistent with *Elmbrook*, this Motion to proceed using initials is accompanied by sworn declarations from the named Plaintiff F.F., detailing her credible fears that revealing her full

name could result in retaliation against her. Those sworn declarations and the Complaint make clear that public revelation of F.F.'s identity would expose her to a substantial risk of harassment, intimidation, and retaliation from members of the public who hold strong opposing views on issues of gender identity in schools. Such risks are substantial, particularly given the public controversy surrounding these issues. Proceeding under her initials is necessary to protect F.F. from the very real threat of doxxing, online harassment, protests at home or school, or other forms of retaliation that could further harm F.F.'s mental health.

The public has a strong interest in the legal issues presented—whether and how a public school district may grant cross-sex access to sex-segregated facilities. That interest can be fully served without disclosing F.F.'s identity. The use of her initials will not hinder the public's ability to follow the proceedings or understand the Court's rulings.

Defendants will suffer no prejudice from the redaction of F.F.'s full name. They know her identity and will have full discovery rights. The School District already possesses all relevant records concerning F.F. and the challenged policies. Anonymity will not impair Defendants' ability to defend this case.

Undersigned counsel conferred with Defendants' counsel about this Motion, who indicated that they intend to oppose it.

## IV.    CONCLUSION

For the foregoing reasons, named Plaintiff F.F. respectfully requests that the Court grant this Motion and enter an order permitting F.F. to proceed under her initials "F.F." throughout this litigation. F.F. requests that the Court direct the Clerk to maintain under seal any documents that would reveal her full name, including, without limitation, the unredacted version of the sworn declaration accompanying this Motion.

Dated: June 3, 2026

Respectfully submitted,

<u>/s/ Ajay Gupta</u>
Ajay Gupta
2849 Bond Circle
Naperville, Illinois 60563
Telephone: (630) 854-7194
Email: ajguptaemail@gmail.com
N.D. Ill. Bar No. 190101
*Counsel for Plaintiff F.F. and the Proposed Class*

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| F.F., a minor, by and through her next friend and father, JAMES ELLARD FISHER, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:25-cv-9112 |
| v. | ) ) | Judge: |
| | ) | Sharon Johnson Coleman |
| VALLEY VIEW COMMUNITY UNIT SCHOOL DISTRICT 365U, DR. KEITH WOOD, in his official capacity as Superintendent of Schools for the Valley View Community Unit School District 365U, and DR. JASON PASCAVAGE, in his official capacity as Principal of Bolingbrook High School, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DECLARATION OF F.F. IN SUPPORT OF**
**MOTION TO REDACT FULL NAME**

I, ▮▮▮▮▮▮ (F.F.), declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.    I turned 18 years old on October 10, 2025, and I am now an adult. I graduated from Bolingbrook High School on May 18, 2026, and I am no longer enrolled there.

1

2.      I request that this case be resolved with my full name redacted in all public filings. Public disclosure of my full name would likely cause significant emotional harm to me.

3.      I fear that revealing my identity will subject me to retaliation, harassment, intimidation, or ostracism, especially as I begin college.

4.      Such harms are likely to persist throughout my college years, adversely affecting my curricular and extracurricular activities and social interactions.

5.      I also fear that revealing my identity would significantly damage my career prospects upon completing college.

Executed in Bolingbrook, Illinois, on this the 3d day of June, 2026.

 (F.F.)

2

Appendix

Unpublished Authority Cited

*Students for Fair Admissions v. Trs. of Est. of Bishop*, No. CV 25-00450 MWJS-RT, 2026 WL 937289, at \*16 (D. Haw. Apr. 7, 2026).

2026 WL 937289
Only the Westlaw citation is currently available.
United States District Court, D. Hawai'i.

## STUDENTS FOR FAIR ADMISSIONS;

I.P., by and through her next friend
and mother, B.P.; and B.P., Plaintiffs,

v.

TRUSTEES OF the ESTATE OF

Bernice Pauahi BISHOP d/b/

a Kamehameha Schools, Defendant.

Civil No. 25-00450 MWJS-RT

|

Signed April 7, 2026

**Synopsis**
**Background:** Voluntary membership organization, students, and parents brought action against trustees of private school system dedicated to education and upbringing of Native Hawaiians alleging that system's admissions policy had effect of excluding applicants without Native Hawaiian background, in violation of § 1981. Student and parent moved for leave to proceed in pseudonymous manner, and trustees filed cross-motion to compel individual plaintiffs to publicly identify themselves.

**Holdings:** The District Court, Micah W.J. Smith, J., held that:

rule requiring that court filings identify minors by their initials did not apply to student who turned 18 during suit's pendency;

student and her parent were entitled to proceed anonymously at pleading stage; and

organization was not required to publicly identify names of families upon whom it relied to establish its associational standing.

Motion granted in part and denied in part.

**Procedural Posture(s):** Other.

**Attorneys and Law Firms**

Adam K. Mortara, Pro Hac Vice, Lawfair LLC, Nashville, TN, Cameron T. Norris, Pro Hac Vice, J. Michael Connolly, Pro Hac Vice, Julius Kairey, Pro Hac Vice, R. Gabriel Anderson, Pro Hac Vice, Ryan Mackenzie Proctor, Pro Hac Vice, Thomas R. McCarthy, Pro Hac Vice, Consovoy McCarthy PLLC, Arlington, VA, Jesse Franklin-Murdock, Sweigart Murdock, LLP, San Francisco, CA, Patrick Strawbridge, Pro Hac Vice, Consovoy McCarthy PLLC, Boston, MA, for Plaintiff Students for Fair Admissions.

Patrick Strawbridge, Pro Hac Vice, Consovoy McCarthy PLLC, Boston, MA, Ryan Mackenzie Proctor, Pro Hac Vice, Consovoy McCarthy PLLC, Arlington, VA, Jesse Franklin-Murdock, Sweigart Murdock, LLP, San Francisco, CA, for Plaintiffs I.P., B.P..

Ellyde R. Thompson, Pro Hac Vice, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, John F. Bash, Pro Hac Vice, Quinn Emanuel Urquhart & Sullivan, LLP, Austin, TX, William A. Burck, Pro Hac Vice, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, DC, Joachim P. Cox, Kamala S. Haake, Cox Fricke A Limited Liability Law Partnership LLP, Honolulu, HI, for Defendant.

ORDER (1) GRANTING IN PART AND DENYING IN PART MOTION OF PLAINTIFFS I.P. AND B.P. TO PROCEED USING INITIALS AND (2) DENYING DEFENDANT'S CROSS-MOTION TO COMPEL PLAINTIFFS TO IDENTIFY THEMSELVES

Micah W.J. Smith, United States District Judge

### INTRODUCTION

**\*1** At issue are two motions concerning the identities of individuals involved in this suit. In one, an eighteen-year-old and her parent—Plaintiffs I.P. and B.P.—move to "proceed under their initials throughout the duration of this case," rather than under their true names. Dkt. No. 54, at PageID.495. In the other, Defendant Trustees of the Estate of Bernice Pauahi Bishop d/b/a Kamehameha Schools ("Kamehameha Schools") moves to dismiss this action unless the true identities of I.P., B.P., and the members of Plaintiff Students

for Fair Admissions ("SFFA") referred to in the complaint—Families A and B—are publicly disclosed. Dkt. No. 84.

As the Ninth Circuit recognized some sixteen years ago, "[f]ew tenets of the United States justice system rank above the conflicting principles [of] the transparency and openness of this nation's court proceedings and the ability of private individuals to seek redress in the courts without fear for their safety." *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1038 (9th Cir. 2010) ("*Doe II*"). The present motions call on this court, once again, to make its best effort to reconcile these conflicting principles. And the court must do so based on the individual circumstances of this new dispute.

## BACKGROUND

### A. SFFA Files This Lawsuit and Its President and Local Counsel Receive Hostile and Even Threatening Communications

The defendant in this action, Kamehameha Schools, was "founded under a charitable testamentary Trust established by the last direct descendant of Hawaii's King Kamehameha I, Princess Pauahi Bishop, who left her property in trust for a school dedicated to the education and upbringing of Native Hawaiians." *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 295 F. Supp. 2d 1141, 1145 (D. Haw. 2003) (citation omitted) ("*Doe I*"). The schools "have sought to preserve the Hawaiian culture and identity by providing classes on Hawaiian culture and teaching classes in the Hawaiian language," which had been "banned in public schools from 1896 to 1986." *Doe II*, 596 F.3d at 1039. And the board of trustees has, at least in the past, "interpreted the trust instrument to require the admission of Native Hawaiians to the near exclusion of applicants of other racial backgrounds." *Id.*

The lead plaintiff here is SFFA, a "voluntary membership organization formed for the purpose of defending human rights and civil liberties, including the right to be free from illegal racial discrimination, through litigation and other lawful means." Dkt. No. 78, at PageID.1263 (Second Amended Compl.). In SFFA's view, the admissions policy at Kamehameha Schools—both in the past and present—amounts to "racial discrimination in contracting" that is

"illegal under 42 U.S.C. § 1981." *Id.* at PageID.1262. Although SFFA does not appear to have had any historical connection to Hawaiʻi, in around September 2025, it "launched the website kamehamehanotfair.org" with the aim of identifying individuals who might support, either as members of SFFA or as individual plaintiffs, a lawsuit challenging the admissions policy at Kamehameha Schools. Dkt. No. 54-5, at PageID.551 (Decl. of Edward Blum).

**\*2** The record shows that since the website's launch, SFFA's president, Edward Blum, has "received a barrage of phone calls, emails, voicemails, and other submissions" that have been "overwhelmingly hostile." *Id.* Indeed, Blum reports that he has been "overwhelmed" with "so many calls and messages that, for the first time since [he] started doing this work, [he] had to create a new email account and delist [his] personal phone number." *Id.*

The hostile and critical communications have not been limited to Blum. SFFA's complaint was filed in October 2025, and Jesse Franklin-Murdock noticed his appearance as SFFA's lone counsel based in Hawaiʻi. Dkt. No. 1, at PageID.1 (citing Franklin-Murdock's Hawaiʻi bar number while all other listed counsel are listed as having "pro hac vice forthcoming"). And on October 30, 2025, Franklin-Murdoch received a bag of feces in the mail from "A.S. Enterprises," a "website that mails feces to people." Dkt. No. 54-7, at PageID.576. Franklin-Murdock does not identify any threats or hostile messages conveyed directly to him, but a significant number of publicly posted online messages have been hostile, and several of those have amounted to threats of violence against him from individuals whose identities have not been demonstrated. Other online postings have expressed hostility not only toward Franklin-Murdock, but toward members of his family as well.

### B. The Cross-Motions

In the initial complaint, SFFA was the only named plaintiff, and it cited two anonymous members—identified in the complaint as Families A and B—in support of its associational standing. Dkt. No. 1, at PageID.21-25. The daughter of Family A is currently in the ninth grade, and the daughter of Family B is currently in the second grade. *Id.* at PageID.21-23. Neither of these children has ever applied for admission to Kamehameha Schools, but they represent that

they wish to apply if SFFA prevails in this lawsuit and obtains prospective injunctive relief. *Id.* at PageID.22-25.

The complaint was amended on December 1, 2025, to include I.P. and B.P. as Plaintiffs. Dkt. No. 36. At that time, I.P. was 17 years old and was on the cusp of turning 18; since the filing of the motion, she has become an adult. B.P. is I.P.'s mother. Although it is too late for I.P. to seek prospective admission into Kamehameha Schools, I.P. and B.P. seek monetary damages because I.P. allegedly applied for admission in 2022 and was rejected. Dkt. No. 54-3, at PageID.529-30.

The complaint identifies I.P. and B.P., not by their true names, but by their initials. So on January 21, 2026, they filed a motion seeking leave to proceed in this pseudonymous manner. Dkt. No. 54. In support of their motion, I.P. and B.P. have filed declarations from Blum and Franklin-Murdock detailing the communications described above; a declaration from B.P.; a publicly-filed redacted appendix including images of many of these communications, as well as other materials, Dkt. No. 54-8 (Vol. 1) and 54-9 (Vol. 2); and an appendix filed under seal without redactions, Dkt. No. 85.

On February 18, 2026, Kamehameha Schools filed an opposition to I.P. and B.P.'s motion, together with a cross-motion to compel I.P., B.P., and the two anonymous families referred to in SFFA's complaint—Families A and B—to publicly identify themselves. Dkt. No. 84. Kamehameha Schools contends that I.P. and B.P. have not met the high standard for litigating with pseudonyms, and that Supreme Court and Ninth Circuit precedent require that an organization publicly identify by true name the members on whom it relies to establish associational standing.

 **\*3**  After I.P. and B.P. filed an opposition to Kamehameha Schools' cross-motion and a reply in support of their own motion, Dkt. No. 96, and Kamehameha Schools filed a reply in support of its cross-motion, Dkt. No. 107, the court held a hearing at which counsel presented argument, Dkt. No. 115. The court thanks all counsel for their effective written and oral advocacy.

## DISCUSSION

The pair of motions present two key questions: whether I.P. and B.P. have met their burden of establishing that it is appropriate to allow them to proceed using their initials; and whether precedent requires SFFA to publicly identify the students in Families A and B—who are at present minors—by their real names in the operative complaint. The court considers each question in turn.

### A. I.P. and B.P. Have Not Yet Established That It Would Be Appropriate for them to Litigate the Entire Case Using Initials, But Have Established that Initials Are Appropriate for Now

Rule 10(a) of the Federal Rules of Civil Procedure "command[s] that the title of every complaint 'include the names of all the parties.' " *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000) (quoting Fed. R. Civ. P. 10(a)). To satisfy that requirement, parties ordinarily must use their true names. As the Ninth Circuit has put it, the "normal presumption in litigation is that parties must use their real names." *Doe II*, 596 F.3d at 1042. And since the public has an interest in knowing "who is using their courts," *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997), this presumption protects "the public's common law right of access to judicial proceedings," *Doe II*, 596 F.3d at 1042. Requiring a party to be identified by true name also generally protects the opposing party from prejudice. *Advanced Textile*, 214 F.3d at 1068.

But while the presumption is "not taken lightly," *Doe II*, 596 F.3d at 1042, it may be overcome and a court may permit "parties to proceed anonymously when special circumstances justify secrecy." *Advanced Textile*, 214 F.3d at 1067. That permission must be limited to "the unusual case," however, such as when "identification creates a risk of retaliatory physical or mental harm," when "anonymity is necessary to preserve privacy in a matter of [a] sensitive and highly personal nature," or when "the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution." *Id.* at 1068 (cleaned up).

To identify the unusual case in which a party's use of pseudonyms is appropriate, a court in the Ninth Circuit must "balance five factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, (3) the

anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest." *Doe II*, 596 F.3d at 1042 (quoting *Advanced Textile*, 214 F.3d at 1069) (cleaned up). In applying this test, a court must carefully consider how the individualized record of a given case interacts with each of the five factors, as doing so is "necessary to ensure that each of the concerns is considered in its own right." *Doe II*, 625 F.3d 1182, 1197 (9th Cir. 2010) (Beezer, Graber, and Fisher, JJ., concurring in the denial of rehearing en banc).

### 1. Rule 5.2 Does Not Provide a Basis for Avoiding the Application of the Ninth Circuit's Five-Factor Test Here

**\*4** I.P. and B.P. argue, however, that the court need not assess the five factors at all, or at least not with their usual stringency. They point to Rule 5.2 of the Federal Rules of Civil Procedure, which provides that "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains ... the name of an individual known to be a minor," the "party or nonparty making the filing may include only" the "minor's initials." Fed. R. Civ. P. 5.2(a)(3). And they argue that Rule 5.2 presumptively allows them to proceed with their initials here.

Several aspects of their argument are uncontroverted. No one disputes that Rule 5.2 applies to complaints, as well as any other publicly filed documents. Nor does anyone dispute that the rule applies automatically, creating a presumption in favor of the use of a minor's initials without requiring the filing party (or nonparty) to first make a sufficient showing under the Ninth Circuit's five-factor test. *Accord Doe II*, 625 F.3d at 1187 (Reinhardt, J., dissental). It is similarly undisputed that, at the time the operative complaint was filed, I.P. was still a minor—though on the cusp of turning eighteen.

It also appears to be undisputed that I.P. and B.P cannot rely solely on Rule 5.2. They seek permission not only for I.P. to use her initials in the complaint, but for her mother B.P. to do so as well. And B.P. is not a minor falling within Rule 5.2's protections, which means she must make a sufficient showing for herself under the Ninth Circuit's five-factor test. *See J.B. v. Banning Unified Sch. Dist.*, Case No. EDCV 18-2134, 2018 WL 6164312, at \*1 (C.D. Cal. Oct. 18, 2018) (recognizing that Rule 5.2(a) "provides only for the use of the initials

of minors themselves, and not their parents"). That said, a parent of a minor ordinarily is allowed to proceed with initials because that permission is needed to protect the privacy of the minor, whose identity might otherwise be effectively disclosed. And that is precisely the argument I.P. and B.P. make here. *See* Dkt. No. 54-1, at PageID.511.

But Kamehameha Schools counters that even I.P. can no longer rely on Rule 5.2(a), given that since the filing of the operative complaint, I.P. has become an adult. This argument is convincing. By its plain terms, Rule 5.2(a)(3) no longer applies to I.P. Recall that the rule presumptively calls on a party or nonparty to use only a "minor's initials" when making a "filing with the court that contains ... the name of an individual known to be a minor." Fed. R. Civ. P. 5.2(a)(3). That language focuses on the time when a filing is made—it asks whether a person is presently a minor at the time of the relevant filing. And so, as the Third Circuit held, when a party has "turned 18 during the course of litigation," Rule 5.2(a) "no longer applie[s] on a prospective basis." *Ricketts v. Titusville Area Sch. Dist.*, 150 F.4th 634, 636 (3d Cir. 2025) (per curiam). Of course, as the Third Circuit also recognized, the party could move for continued permission "to proceed anonymously by demonstrating that doing so would be necessary to prevent serious harm." *Id.* But that, in the Ninth Circuit, would be an argument under the five-factor test, rather than an argument for bypassing the test.

I.P. and B.P. resist this conclusion, noting that Rule 5.2(e) separately authorizes a court to issue protective orders to "require redaction of additional information" beyond that covered by Rule 5.2(a). Fed. R. Civ. P. 5.2(e). But Rule 5.2(e) creates no presumption in favor of any redaction. To the contrary, the rule makes clear that any protective order must be justified by "good cause." *Id.* And when the matter to be redacted in the party's true name, making that good cause showing requires a party to satisfy the Ninth Circuit's five-factor test.

### 2. The Five-Factor Test, On the Present Record, Weighs in Favor of Allowing I.P. and B.P. to Use Their Initials at This Time

**\*5** We turn, then, to that five-factor test. The first three factors are tightly interrelated and, therefore, are considered

together: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, [and] (3) the anonymous party's vulnerability to such retaliation." *Doe II*, 596 F.3d at 1042 (cleaned up).

### a. The Severity of the Feared Harm

The first of these factors concerns the severity of the harm that I.P. and B.P. believe is threatened against them. Here the question is not whether it is reasonable to fear that any such harm is threatened, but merely whether I.P. and B.P. do fear harm and how serious that feared harm is. Moreover, the court must consider "the threat of not only physical harm, but also economic and social harm." *Doe II*, Civil No. 08-00359, 2009 WL 308351, at *6 (D. Haw. Feb. 6, 2009) (citing *Advanced Textile*, 214 F.3d at 1070-71). While different forms of harm may properly be given different amounts of weight, they all must be considered.

In her declaration, B.P. expresses the fear of several forms of harm that she believes she and her daughter would face if their identities became public. First, she "fear[s] that, like Mr. Blum and Mr. Franklin-Murdock," she and her daughter "will get a wave of hateful calls, texts, messages, comments, posts, and videos that try to scare [her and her daughter], threaten [their] lives and safety, curse [them] and call [them] vile names, and mock [their appearances]." Dkt. No. 54-4, at PageID.538-39. Second, B.P. fears that I.P. "will be condemned and ostracized by many of her current and former teachers and peers" at her high school, as well as by future college classmates and professors. *Id.* Third, B.P. explains that I.P. "plans to attend school for nursing in Hawai'i" and "will soon begin the application process," and B.P. fears that "the colleges here—which all support Kamehameha—will use her participation as a reason to deny her admission." *Id.* at PageID.539. Fourth, B.P. expresses the fear that "protestors [would] show[ ] up at [I.P.'s] high school, ... or even worse [their] house." *Id.* at PageID.540-41.

B.P. also identifies feared harms that are specific to her, rather than her daughter. First, because B.P. is "currently involved in a contentious matter in state court in Hawai'i, and the outcome will greatly affect [her] financial well-being," B.P. is concerned that her opponent in that lawsuit would "use [her] involvement in this litigation against [her],

hoping to curry favor with the state-court judge by painting [her] as an opponent of Kamehameha Schools." *Id.* at PageID.539-40. Second, B.P. explains that she currently works "at a small business" that relies on a "large number of Native Hawaiians ... as customers," and she expresses the fear that the business would not be able to "afford to keep [her] on" if her identity becomes public in the case. *Id.* at PageID.538. B.P. more specifically expresses the fear that her "employer's online reviews would be flooded with hateful and negative comments from supporters of Kamehameha." *Id.*

### b. Vulnerability to the Feared Harm

For ease of exposition, let us skip ahead to the third factor, which asks how vulnerable I.P. and B.P. are to the forms of harm they fear.

Cases concerning the use of anonymity and pseudonyms consistently recognize that children are uniquely vulnerable and that the "youth" of a plaintiff can, therefore, be a "significant factor in the matrix of considerations arguing for anonymity." *Doe II*, 596 F.3d at 1045 (cleaned up). I.P. is still a high school student, and so this age-related concern does extend to her. At the same time, I.P. is no longer a child; she has turned 18 and is on the cusp of graduating from high school. It follows that the age-related concern is not as great here as it would be in the case of, say, the children in Families A and B—who are in the second and ninth grade.

**\*6** B.P.'s declaration identifies some other forms of vulnerability: She and her daughter live in Hawai'i, and in a "small town" where "everyone knows where everyone lives." Dkt. No. 54-4, at PageID.538. If their identities become "public in this case, so will [their] personal address." *Id.* These facts do indeed increase the vulnerability of I.P. and B.P. to the threats of harm, harassment, and ostracization that they fear. And because there is no dispute that I.P. is currently applying to college in Hawai'i, she is also more vulnerable to the harm of retaliation that B.P. fears (that is, the hypothesized fear that a Hawai'i-based school would hold I.P.'s participation in this lawsuit against her).

Similarly, because there is no dispute that B.P. is currently working in a small business that relies on a "large number of Native Hawaiians ... as customers" and is currently involved

Students for Fair Admissions v. Trustees of Estate of Bishop, --- F.R.D. ---- (2026)

in contentious Hawai'i state court litigation, she is vulnerable to the harms she fears: that is, her stated fears that the small business at which she works would no longer employ her, and that the Hawai'i state court would become biased against her, if her identity were to become public.

I.P. and B.P. have, in short, shown that they are somewhat more vulnerable than the typical party to the forms of harm they fear. It is not as strong a showing of vulnerability as the kind young children might make, to be sure, but the court nonetheless gives it some weight under the third factor in the five-factor test.

**c. The Reasonableness of the Fear of Harms**

The preceding discussion naturally leads to the key question, which is the one called for by the second factor in the five-factor test: whether I.P. and B.P.'s expressed fears of harm are reasonable.

i. The most serious of the harms I.P. and B.P. fear are the threats of physical violence, followed by the threats of harassment. The current record does not, however, contain any evidence of any such threats against I.P. or B.P., let alone any motivated by their participation in this lawsuit. Nor is there any evidence that anyone has engaged in any harassment of them for that reason. Of course, their use of initials in the operative complaint might account for this dearth of evidence to some extent. *Cf. Shelby County, Ala. v. Holder*, 570 U.S. 529, 590, 133 S.Ct. 2612, 186 L.Ed.2d 651 (2013) (Ginsburg, J., dissenting) (noting the imprudence of "throwing away your umbrella in a rainstorm because you are not getting wet"). But it does not fully explain it. After all, I.P. and B.P. have been identified by initials in their court filings, and a person wishing to make a threat against them could easily have done so in reference to those initials. Threats of that nature could readily be posted online. And since their attorneys have been publicly identified, threats or harassment meant for I.P. or B.P. could easily be directed toward their attorneys. That that has not happened weighs against the reasonableness of their fear that they would receive threats of physical violence or harassment if publicly identified.

But there have been threats and harassment of others connected to this case—namely, Blum and Franklin-Murdock

—and I.P. and B.P. principally rely on these to substantiate the reasonableness of their own fears.

SFFA, I.P. and B.P. all acknowledge that the largest number of communications about Blum, the President of SFFA, and Franklin-Murdock, as local counsel of record, have amounted to "mere 'criticism.' " As Plaintiffs themselves put it, had they "submitted all the criticism they've received for this case, it would have crashed the Court's ECF." Dkt. No. 96, at PageID.2102. This category includes, for example, two Hawai'i state legislators who traveled to SFFA's address in Virginia in an effort to speak with Blum—presumably in the hopes of sharing their criticism of the then-planned lawsuit with Blum in person. Dkt. No. 54-5, at PageID.563.[1] And as Plaintiffs' counsel acknowledged at the hearing on these motions, mere criticism would not, without more, support a party's use of a pseudonym. Put differently, mere criticism does not qualify as "harm" within the meaning of the Ninth Circuit's five-factor test.

**\*7**  The next-largest batch of communications in the record fall into the category of hostile and even disturbing messages that are, nonetheless, not fairly viewed as threats of physical violence. Some of these were communicated directly to Blum. For example, Blum received a voicemail in which the speaker asserted, "Stay the f*ck out of Hawaii you f*cking haoles. You're not welcome there. Kamehameha School is for Kanaka only for a f*cking reason, and it's because colonizers like you, Virginian cunts wouldn't let them go to school made by white people." *Id.* at PageID.552-53. He received a separate voicemail in which the speaker said, "y'all need to drop the f*cking lawsuit. You f*cking pathetic b*tches. Because I'll be helping them in any way I can f*cking win against you whores." *Id.* Although extremely hostile, these voicemails do not make or imply any threat of violence, and Plaintiffs have offered no contextual evidence about the speakers that might support interpreting them as such. Other messages, posted publicly online, are similarly hostile—many amounting to disturbing expressions of racism and antisemitism, as well as other forms of prejudice, and some expressing hostility not only toward Franklin-Murdock but also his family—but not expressive of any threat of physical violence. *See, e.g.*, *id.* at PageID.556-59.

Next in sheer volume are threats of physical violence that have been publicly made in online comments against Blum or

Franklin-Murdock. These threats were not conveyed directly to Blum or Franklin-Murdock, but rather were posted in the comments section of news stories about the lawsuit or on social media. Many of them are quite serious in their substance. Several are fairly understood as death threats—some explicit, some implied. For example: "No Ed Blum no more lawsuit, just saying"; "Here's a thought....show up at his door"; "we should remember that violence is NEVER off the table and sometimes, bullets do solve issues. FREE HAWAII"; "Must a butter knife be used only for butter?"; "Fcking haoles! Gotta drown this faka!"; "Calling Luigi asap" (a reference to Luigi Mangione, accused of killing the CEO of UnitedHealthcare); "So Luigi?"; "Luigi coming his way"; "Theres not enough Luigis on the planet. We need more."; "He needs a Charlie Kirk" (meaning Blum should be murdered, as Kirk was); "Time to show him what we did to Captain Cook!!"; "give him the captain cook special!"; "Who can get a piece of his hair???? Aksing por a pren." *Id.* at PageID.553-55. The record in its present form does not show, however, that any of the people who have made these threatening communications are communicating using their real identities (as opposed to online usernames or screen names), or that they truly are supporters of (or affiliated with) Kamehameha Schools.

Finally, the most serious threats of physical harm—those directly communicated to a person, as opposed to merely posted publicly online—are the ones that appear in smallest number in the evidentiary record. These have all been directed toward Blum. In particular, Blum identifies two emails that were sent directly to him that can be fairly characterized as a threat of physical violence:

- On September 8, 2025, Blum received an email from an individual using the name "Kainoa Silva," a "KS grad." *Id.* at PageID.552. The email says, "how absolute fucking dare you that yo[u]r haole ass is trying to take away opp[o]rtunities from native ke[i]ki. I would absolutely beat the shit out of you if I ever saw you." *Id.* It is fairly viewed as a threat of physical violence. But on the present record, it is unclear whether the person who sent the email truly is Silva or even a graduate of Kamehameha Schools. There is no evidence that the emailer is actually a supporter of Kamehameha Schools.

- On September 15, 2025, Blum received an email from someone using the name "Melonee Iujan." *Id.* This

person wrote, "you have always been a plague to indigenous people. Your WHITE POWER syndrome won't prevail on us. I hope you fall on a sharp knife and choke." *Id.* This is fairly viewed as a death wish, but here again, the record does not disclose whether the person who sent the email truly is Iujan. There is no evidence that the emailer is actually a supporter of Kamehameha Schools.

Each of the above emails was received shortly after SFFA created a website in which it announced its intention to challenge Kamehameha Schools' admissions policy and sought out clients to do so.

**\*8** Franklin-Murdock has not identified any threats directly conveyed to him, but he points to the fact that he was "doxed" online—that is to say, his personal information was publicly disclosed—after which, on October 30, 2025, he received at his personal residence a bag of feces in the mail from "A.S. Enterprises," a "website that mails feces to people." Dkt. No. 54-7, at PageID.576. And at least one message appears to have involved an attempt at "doxing" Blum; a poster publicly listed his name, phone number, and personal email, which in context suggests at least this one online commentator's desire to encourage others to convey, at a minimum, critical messages directly to Blum, and at least conceivably more hostile ones as well. Dkt. No. 54-8, at PageID.1874.

ii. The question is what to make of this record. Each of the parties argues that the court should draw lessons from the handling of pseudonyms in earlier cases involving challenges to Kamehameha Schools' admissions policy. Given the highly fact-intensive nature of the inquiry, the court cannot rest its analysis solely on how past courts resolved similar motions on different factual records. But in any event, the relevant past precedents point in contradictory directions.

In the first lawsuit—which we have referred to above as "*Doe I*"—the plaintiff child was allowed to proceed using a pseudonym, both in this court and in the Ninth Circuit. Kamehameha Schools argues that these decisions are of limited precedential value because the use of the pseudonym was not challenged in that case. But it is well established that "the privilege of suing or defending under a fictitious name should not be granted automatically even if the opposing party does not object." *Blue Cross & Blue Shield United of Wisc., 112 F.3d at 872.* That is because "the judge has an independent duty to determine whether exceptional circumstances justify

such a departure from the normal method of proceeding in federal courts." *Id.* And, indeed, the docket of that case reflects that this court was careful to protect the public's right of access to judicial records, even when the parties themselves had raised no objections to secrecy. *See, e.g., Doe I*, Civ. No. 03-00316, at Dkt. No. 14 (rejecting stipulated protective order because "if permitted, [it] would [have] provide[d] the parties with the ability to file documents under seal, without first making any showing as to the good cause for a protective order to issue on a document by document basis"). So the fact that this court—as well as the Ninth Circuit—allowed the plaintiff to use a pseudonym in *Doe I* is precedential support for allowing I.P. and B.P. to do the same here. That said, because Kamehameha Schools did not raise any objections to the use of a pseudonym in that proceeding, it also did not make any argument that it would be prejudiced through that use. Accordingly, to the extent that Kamehameha Schools makes a showing of prejudice here, the proceedings in *Doe I* would be readily distinguishable.

In the second lawsuit—referred to earlier as "*Doe II*"—a magistrate judge of this court denied the child plaintiffs the right to use pseudonyms, 2008 WL 4755674 (Oct. 28, 2008), and denied a motion for reconsideration, 2008 WL 5423191 (Dec. 31, 2008). The assigned district judge affirmed the magistrate judge's order, 2009 WL 308351 (Feb. 6, 2009), and a panel of the Ninth Circuit held that the decision was not an abuse of discretion, though it hastened to add that it likely would also have affirmed a contrary conclusion, 596 F.3d 1036 (9th Cir. 2010). Then, over the impassioned dissents of then-Chief Judge Kozinski and Judge Reinhardt, the Ninth Circuit denied rehearing en banc. 625 F.3d 1182 (9th Cir. 2010).

Out of this messy procedural history, Kamehameha Schools perceives a strong precedent weighing heavily in favor of denying the motion in this case. But the district court and Ninth Circuit decisions in *Doe II* were, naturally, grounded in the peculiarities of the record developed there. And those peculiarities included the fact that the plaintiffs were seeking the prospective relief of being admitted to Kamehameha Schools; against that backdrop, those plaintiffs disavowed any fear that they would be retaliated against if they were granted that remedy and actually attended the school. The magistrate judge relied heavily on that evidentiary wrinkle. *See* 2008 WL 4755674, at *4. And in affirming, the Ninth Circuit did the same. *See* 596 F.3d at 1045. The panel majority

reemphasized that concession in explaining their vote to deny rehearing en banc. *See* 625 F.3d at 1196 (Beezer, Graber, and Fisher, JJ., concurring in the denial of rehearing en banc) ("Moreover, the district court weighed the comments regarding violence at Kamehameha against the plaintiffs' own statements that they did not fear possible retaliation and ostracism at Kamehameha Schools if and when they are admitted." (cleaned up)).

**\*9** In the present case, by contrast, I.P. and B.P. make no such concession, and in fact I.P. is not seeking any prospective relief. And B.P. represents that she and her daughter are very much afraid of violent and other forms of retaliation if their identities are revealed.

The upshot is that neither *Doe I* nor *Doe II* provides conclusive precedential guidance. Because the issue was not contested in the first case, the record is sparse, and there is no documented reasoning for why pseudonyms were allowed. And, moreover, prejudice to Kamehameha Schools was not alleged, and therefore was not considered. Meanwhile, the second case included a critical concession —that the plaintiffs did not fear harm—that this case does not, and so the evidentiary records in the two cases cannot be viewed the same way. For these reasons, the court must resolve the pending motions, not based merely on its reading of precedent, but based on its examination of the evidentiary record presented here.

iii. Looking at that record on its own merits, two observations are warranted. The first is that, while there have been three threats of physical violence communicated directly to Blum, and while a bag of feces was sent to Franklin-Murdock, these are unquestionably unusual occurrences against the backdrop of the larger body of communications in the record. Meanwhile, as SFFA acknowledges, the most common forms of communications are mere criticisms—so many of them, in fact, that "[h]ad Plaintiffs submitted all the criticism they've received for this case, it would have crashed the Court's ECF." Dkt. No. 96, at PageID.2102. What this record shows is that the most serious forms of communications—the threats of physical violence directly communicated to Blum, which would provide strong support for pseudonyms if made in abundance—have only very rarely occurred. Indeed, the record shows Blum has only received two of them, each via email, and both were sent to Blum shortly after SFFA created its website. And moving along the spectrum of seriousness,

the less substantially the messages support pseudonyms, the larger in number they grow.

The second observation is that none of the threats of physical violence, harassment, or hostility have thus far been directed toward I.P. and B.P. themselves. Accordingly, the key question here is whether it is fair to infer that I.P and B.P. *would* receive messages similar to the ones Blum and Franklin-Murdock have already received if their identities as plaintiffs in this lawsuit were made public. It can be appropriate to draw an inference of this sort in certain circumstances. *See Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 853 (N.D. Cal. 2023) (reasoning that "[w]hile the threatening emails were not sent to Plaintiffs directly, the emails wish death upon Plaintiffs' counsel on the basis of their involvement in this lawsuit," and it was "reasonable for Plaintiffs to fear that such threats might be carried out against them if their identities were to become public").

But the strength of that inference—the assumption that a party whose identity is made public will face the same threats or hostility as their attorney—turns on the evidentiary particularities of the case at hand. And here, there are reasons to conclude that while I.P. and B.P. are likely to receive the more innocuous forms of communication (a substantial amount of mere criticism, and perhaps even some of the more hostile kinds of publicly posted online comments), they are substantially less likely than Blum and Franklin-Murdock to receive directly communicated or even online postings of threats of violence.

 **\*10** First of all, it is significant that I.P. and B.P. identify no threats, harassment, or even hostility directed toward them since they joined as plaintiffs in this lawsuit. As noted earlier, although the fact that I.P. and B.P. have not been publicly identified can partially explain that absence of threats directed toward them, it cannot fully explain it, given that such threats could readily be posted online against the identified initials or conveyed to their publicly-identified attorneys of record.[2] And, indeed, at least one threat of that sort was directly communicated to the child plaintiffs' attorneys in *Doe II*. *See* 2008 WL 5423191, at \*2 (describing a telephone call in which the caller asserted that it was "good ... that everyone is going to know who your clients are" because "[n]ow, both you and your haole clients can get the lickins' you deserve"). No one suggests that anything of that sort has been communicated

here, whether directly to Plaintiffs' counsel or through public postings online, and that weighs against the reasonableness of concluding that I.P. and B.P. would directly receive any threats or harassment if publicly identified.

The inference that I.P. and B.P. would receive the same barrage of messages as Blum and Franklin-Murdock is, moreover, weakened by the historical backdrop of this case. Before filing a lawsuit or identifying any individual plaintiffs, SFFA—and its President, Blum—created a public and highly publicized website soliciting clients for a lawsuit challenging Kamehameha Schools' admissions policy. SFFA is a high-profile national organization that has no obvious connection to Hawai'i, and so under these circumstances, the public impression would naturally have been that it was SFFA—rather than any individual clients it might eventually recruit—that was the moving force behind the lawsuit. That public impression would, in turn, cast any individual plaintiffs as more reactive or passive participants in the lawsuit. Under these circumstances, there is less of a reason to believe that the same kinds of communications made against Blum and Franklin-Murdock would be made against any individual plaintiff who is publicly identified. To be clear: this is not meant as criticism of any steps SFFA took to prepare and then file this lawsuit. It is merely to say that those steps are fairly understood as having made SFFA, Blum, and SFFA's attorneys the lightning rods of any controversy.[3]

Still, given the extraordinary volume of criticism Blum and Franklin-Murdock have received, it is fair to conclude that I.P. and B.P. would receive similar criticism if they were publicly identified—even accounting for the likelihood that they would receive substantially less of it. But as noted earlier, I.P. and B.P. concede that mere criticism would not warrant the use of initials.

At the other extreme, given that Blum has only pointed to two threats of violence that were directly conveyed to him, and Franklin-Murdock has only received one direct communication in the form of the bag of feces, the present record does not support the inference that any threats of physical violence or harassment would be directly conveyed to I.P. or B.P. As noted, I.P. and B.P. are likely to receive substantially less of whatever Blum and Franklin-Murdock have received. And Blum himself has only directly received

Students for Fair Admissions v. Trustees of Estate of Bishop, --- F.R.D. ---- (2026)

two such threats, and Franklin-Murdock has only pointed to one directly conveyed message (again, the bag of feces).[4]

**\*11**  Nonetheless, there are enough messages against Blum and Franklin-Murdock that fall between the above extremes. Those are the threats, harassment, and hostility that have not been directly conveyed to anyone, but instead have been expressed in public comments posted online. While anyone subjected to these kinds of messages would unquestionably be affected negatively, the Ninth Circuit has recognized that "many times people say things anonymously on the internet that they would never say in another context and have no intention of carrying out." *Doe II*, 596 F.3d at 1045.

That said, I.P. and B.P. "are not required to prove" that anyone "intend[s] to carry out the threatened retaliation," but merely that "a reasonable person would believe that the threat might actually be carried out." *Advanced Textile*, 214 F.3d at 1071. And here, the sheer volume of threats, harassment, and hostility that Blum and Franklin-Murdock have received online—at least some of which one might reasonably infer I.P. and B.P. would also receive if they were publicly identified—is enough, if just barely, to make a showing of reasonableness. That is especially so because there have been at least a small number of online postings in which commentators have called for the individual plaintiffs themselves to be publicly identified: "leak the names of those families," "Identify the local families," "Put their name address please," and "We want to see the students who filed the lawsuit." Dkt. No. 54-5, at PageID.559-60. This limited number of postings is not enough to suggest I.P. and B.P. are likely to directly receive any threatening or harassing communications, but it does support the conclusion that at least some hostile or even threatening online commentary would be directed toward them if their identities were made public. That makes their stated fears of being the subjects of online messages of that sort reasonable, even if not by a wide margin.

The reasonableness of that fear is reinforced by the evidence that I.P. and B.P. are, as noted, both residents of a small community in Hawai'i, B.P. works here, and I.P. plans to attend college here. Their presence and links here mean that they are more vulnerable—and therefore, more reasonable for fearing—even online postings of threats, harassment, and hostility than, say, someone who was no longer living in Hawai'i or who did not intend to continue doing so for long.

iv. The economic and other non-violent but retaliatory forms of harm that B.P. anticipates are, however, not reasonable on the current record. She expresses concern that, if she and her daughter are identified as the plaintiffs in this lawsuit, colleges in Hawai'i will hold it against I.P., B.P. will lose her job at a small business that caters to a large client base of Native Hawaiians, and a Hawai'i state court would become prejudiced against her. But the record contains no support for the reasonableness of these assumptions.

To substantiate these concerns, B.P. asserts that she and her daughter "know from experience that many on the island"—referring here to the unnamed island in Hawai'i on which they live—"hold racist, hostile views toward white people like" I.P. and B.P., "particularly white 'foreigners' who came to Hawai'i from the mainland or who, like [B.P.], immigrated from Europe." Dkt. No. 54-4, at PageID.537. The fact that B.P. perceives that "many" people hold those views, however, does not support B.P.'s suggestion that Native Hawaiians—painted with a broad brush—would stop being customers of a business at which she works. Unless a community is to be broadly tainted with the alleged prejudices of some number of its members, no sweeping generalization of that sort can be accepted.

**\*12**  Reaching for a more solid foundation in data for their suggestion, I.P. and B.P. also cite a "Criminal Justice Data Brief" from the Hawai'i Attorney General, dated March 2025, which reports that between 2002 and 2024, there were 95 hate crimes identified in Hawai'i, and 40 of them—or 38.1 percent—involved "Anti-White" bias. Dkt. No. 54-9, at PageID.1002. That report does not advance their position. For one thing, it does not say what percentage of these crimes showing "Anti-White" bias—if any—occurred within the last ten years. The report itself, for example, notes that in 2024—the last year individually analyzed—four of the five identified hate crimes were committed, not against a White person, but by a White person. *Id.* at PageID.1001.[5] For another, it bears repeating here that, just as one would not reasonably draw the inference that White people in Hawai'i are generally biased toward others based on this sampling of 2024 cases, it is similarly unreasonable to infer that Native Hawaiians are generally biased toward White people based on B.P.'s stated anecdotal experience (which, in any event, she describes only in the most generic of ways).[6]

In a similar vein, I.P. and B.P. cite a press release from a federal hate crime prosecution that resulted in a sentencing in 2023. That case offers no reliable window into current prevailing attitudes: the crime at issue was committed in 2014. *Id.* at PageID.996. For these same reasons, the now-dated evidentiary record from *Doe II*—including materials that were relied on, more than a decade and a half ago, to suggest bias against White people in the community more broadly—cannot offer any strong support for the present motion.

\* \* \*

To summarize: In light of the substantial number of hostile online messages against Blum and Franklin-Murdock, the court will not deny I.P. and B.P.'s motion for failure to make a sufficient showing on the first three factors alone. But on the present record, I.P. and B.P. have not made a strong showing on those three factors. What this means is that even a modest showing on the fourth and fifth factors—prejudice to Kamehameha Schools from I.P. and B.P.'s use of initials, or harm to the public's interest in access to judicial records and proceedings—might readily flip the conclusion away from Plaintiffs.[7]

### d. The Prejudice to Kamehameha Schools and the Public Interest in Access to Judicial Records

In the current procedural posture, though, no palpable showing under the fourth and fifth factors has been made.

i. We begin with the possible prejudice to Kamehameha Schools. Here the court must "determine the precise prejudice at each stage of the proceedings," and "whether proceedings may be structured so as to mitigate that prejudice." *Advanced Textile*, 214 F.3d at 1068. In *Advanced Textile*, for example, the Ninth Circuit held that there was no prejudice to the defendant in that case because, at the time, discovery was stayed and the parties were litigating a motion that did not turn in any way on the individualized circumstances of any plaintiff. *Id.* at 1072. For that reason, the Ninth Circuit concluded that it was not yet necessary to let even the defendants know the true identities of the plaintiffs. *Id.*

**\*13** The only meaningful prejudice Kamehameha Schools points to is harm associated with its intended discovery efforts into the individual standing of I.P. and B.P. to litigate this lawsuit. But while "pseudonymity may pose certain logistical challenges during discovery, this case remains at the pleading stage." *GitHub*, 672 F. Supp. 3d at 854. Or as another district court has observed, "at the prediscovery stage," the court "need not yet consider the prejudice defendant will suffer during discovery," as "the relevant prejudice is that which defendant presently suffers as a result of plaintiff's anonymity." *Doe v. County of El Dorado*, No. 2:13-CV-01433, 2013 WL 6230342, at \*5 (E.D. Cal. Dec. 2, 2013). And while it is true that the discovery stage of this case may well be around the corner, allowing I.P. and B.P. to continue using their initials at this time would not prejudice even Kamehameha Schools' *preparation* for the discovery stage, given that I.P. and B.P. have committed to providing at least Kamehameha Schools' counsel their true identities.

ii. Similar considerations attend the public's interest. When the "plaintiffs' identities are not central to the issues raised by a case," the "public interest may not be harmed by permitting plaintiffs to proceed pseudonymously." *GitHub*, 672 F. Supp. 3d at 854. This case is currently at the pleading stage, and the court has no occasion to resolve any merits question that might turn on a declaration from I.P. or B.P. or some individualized fact about them. At this stage, then, the public has no strong interest in the true identities of I.P. or B.P.

To be sure, "like the other factors, the public interest in Plaintiffs' identities may change as the suit progresses." *Id.* at 854 n.12. For example, whenever the court does eventually arrive at the stage at which it must evaluate the factual sufficiency of I.P. and B.P.'s Article III standing to litigate this case, those decisions may well turn on the strength of their declarations and individualized circumstances. And courts have recognized that a "named witness, including a party witness, 'may feel more inhibited than a pseudonymous witness from fabricating or embellishing an account.'" Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1384 (2022) (quoting *Doe v. Delta Airlines Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015), *aff'd* 672 F. App'x 48 (2d Cir. 2016)), and collecting other cases reaching similar conclusions). But we are not at that stage now.

Students for Fair Admissions v. Trustees of Estate of Bishop, --- F.R.D. ---- (2026)

### e. Conclusions

For the foregoing reasons, the court reaches the following rulings on I.P. and B.P.'s motion for permission to use their initials:

Because I.P. and B.P. have not failed to make at least a bare minimum showing under the first three factors, and because the fourth and fifth factors do not, at this stage, outweigh the showing on the first three, their motion is GRANTED IN PART. Specifically, the motion is granted to the extent that I.P. and B.P. sought permission to proceed using their initials at the current procedural posture of the case.

Once the case enters the discovery phase, a reassessment of the five-factor test may be warranted. For that reason, the court cannot now grant I.P. and B.P. permission to proceed with their initials for the duration of this case, and their motion is DENIED IN PART to the extent they sought that permission.

Given the court's own need to conduct "a meaningful recusal check," as well as the need to ensure that any judgment in this case is properly given "preclusive effect in future litigation," *Doe v. Mass. Institute of Tech.*, 46 F.4th 61, 77 (1st Cir. 2022), Plaintiffs are ORDERED to provide forthwith, under seal and ex parte, the true identities of I.P. and B.P. to the court.

Finally, because the record contains no evidence that Kamehameha Schools itself has in any way threatened or harassed, or otherwise caused any harm to I.P. or B.P., the court concludes that there is no reason to limit the disclosure of I.P. and B.P.'s true identities to Kamehameha Schools' counsel. The court therefore ORDERS the parties to meet and confer about a protective order under which I.P. and B.P.'s true identities may be shared with Kamehameha Schools' counsel and properly designated individuals within Kamehameha Schools itself. The parties are FURTHER ORDERED to provide a joint status report, within fifteen days of this order, on the progress of their efforts to enter into a protective order of this sort.

### B. SFFA Is Not Required to Publicly Identify the Children in Families A and B by their Real Names

**\*14** The above discussion resolves, at least for this procedural posture of the case, the questions concerning I.P. and B.P. But Kamehameha Schools has filed a cross-motion of its own, in which it challenges SFFA's decision not to provide, publicly in its operative complaint, the true identities of the individuals currently identified as forming Families A and B. In Kamehameha Schools' view, when an organization claims to have associational standing for a lawsuit—that is, Article III standing based on the standing of its members, as opposed to standing based on any harm it has faced itself as an organization—it must publicly disclose the relied-upon members' true names. The court turns to this issue now.

Kamehameha Schools' argument is that Supreme Court, Ninth Circuit precedent, and out-of-circuit precedent all support the conclusion that Families A and B must be identified publicly in the complaint using their true names. It relies, first, to *Summers v. Earth Island Institute*, in which the Supreme Court held that it was insufficient for an organization to allege "a statistical probability that some of the [organization's] members are threatened with concrete injury" as a consequence of the conduct challenged in the suit. 555 U.S. 488, 497, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). And it points, particularly, to the Supreme Court's explanation that allowing such a statistical theory "would make a mockery of [the Court's] prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one *identified member* had suffered or would suffer harm." *Id.* at 498, 129 S.Ct. 1142 (emphasis added). Kamehameha Schools next cites the Ninth Circuit's decision in *Satanic Temple v. Labrador*, in which the circuit acknowledged that associational standing generally "requir[es] members to be named." 149 F. 4th 1047, 1050-51 (9th Cir. 2025). Finally, Kamehameha Schools relies on out-of-circuit cases such as *Draper v. Healey*, 827 F.3d 1 (1st Cir. 2016), in which those courts have made similar observations. *See id.* at 3 (recognizing that "the Supreme Court has said that an affidavit provided by an association to establish standing in insufficient unless it names an injured individual").

Each of these authorities demonstrates that the members on whom an organization relies for associational standing must be publicly identified. But while it is well-settled that such members must be named, none of these cases distinctly answers the question of what must be done to adequately name them for Article III purposes. None of these cases, after all, concerned a situation in which an organization sought

to "name" its standing members through pseudonyms or other anonymous identifiers. The problem in *Summers*, for example, was that the plaintiff organization sought to rely merely on the statistical likelihood that it *would* have an affected member; that is to say, it did not name—whether by pseudonym or otherwise—any affected member at all.

Nor is a requirement to "name" standing members, as a matter of plain language, fairly understood to require the public use of one's true name. After all, Rule 10(a) itself "command[s] that the title of every complaint 'include the names of all the parties.' " *Advanced Textile Corp.*, 214 F.3d at 1069 (quoting Fed. R. Civ. P. 10(a)). Yet the Ninth Circuit has allowed parties—when the circumstances warrant it—to satisfy this requirement to include their "names" by using initials and pseudonyms. That, as discussed above, is precisely what this court has allowed I.P. and B.P. to do for now. As a matter of language, it is no less appropriate to understand *Summers* and *Satanic Temple* as allowing for similar devices when an organizational plaintiff is naming its standing members.

 **\*15**  Kamehameha Schools nonetheless argues that a more rigorous naming requirement should apply to associational standing because of its uncomfortable fit with our constitutional tradition. But associational standing is by now a well-accepted form of Article III standing. And were the court to tighten its requirements in the manner Kamehameha Schools here suggests, it would raise perplexing logistical problems. For example, if it truly were the case that an organization must publicly identify its standing members by their true names, then a court decision could be challenged for lack of Article III standing—perhaps years after the event—if it were later discovered that even an innocuous or inadvertent error in naming had been made. It could emerge, for example, that an organization mistakenly named a member using that person's former name—say, a maiden name in the case of an individual member, or a prior entity name in the case of an organizational member—rather than their then-current legal name. Or an organization might reasonably believe that it is sufficient to use a well-known pseudonym, or perhaps not even realize that it is a pseudonym; it would hardly be unreasonable, for example, to erroneously believe the name Mark Twain was a true one.

Perhaps Kamehameha Schools' position could be construed as the more modest one that an organization can meet the obligation of providing a true "name" by simply offering a

sufficiently distinct identifier. That would make room for the use of distinctive pen names, or mistaken but sufficiently distinctive individual or entity names, while perhaps leaving monikers like "Family A" and "Family B" on the other side of the line. But it is hard to see how, if *Summers* and *Satanic Temple* truly stand for the proposition that to "name" a standing member means to publicly provide their true name, one could accept the use of even a distinctive false name in that stead.

Or perhaps the theory would be that so long as sufficient information is provided to clearly identify a member for the court record, then that is sufficient to "name" them. But if that is the case, then Plaintiffs have offered to do that here. They have committed to providing the court (on a sealed ex parte basis) and to Kamehameha Schools' counsel (once a protective order has been negotiated) the true names of the members of Families A and B.

The bottom line is that a requirement to "name" standing members of a plaintiff organization cannot fairly be read as requiring only the use of true, accurate, current legal names. And once substitutes are accepted, there no longer remains any fair basis for challenging Plaintiffs' proposed course of action here.

Of course, a defendant could be prejudiced, and the public's interest in access to judicial records could be harmed, by a failure to publicly identify standing members using sufficiently distinctive names. But while these are legitimate and important interests, the court has been offered no persuasive reason to see them as Article III concerns. *Accord Am. Alliance for Equal Rights v. Fearless Fund Mgt. LLC, 103 F.4th 765, 773 (11th Cir. 2024)* (seeing "no persuasive reason to think that the *United States Constitution* concerns itself with the particular name by which a litigant is called"). At most, these are concerns of the sort that Rule 5.2(a)(3) and *Advanced Textile*'s five-factor test are designed to address. And here, of course, since the children in Families A and B are in the second and ninth grade, they unquestionably are covered by Rule 5.2(a)(3).

For these reasons, Kamehameha Schools' cross-motion is DENIED. This denial is premised on the court's acceptance of SFFA's concession that it will provide the names of Families A and B to the court ex parte and under seal, as well as to Kamehameha Schools' counsel after they

Students for Fair Admissions v. Trustees of Estate of Bishop, --- F.R.D. ---- (2026)

have successfully negotiated an appropriate protective order. Furthermore, because here again, the court sees no basis in the record for precluding at least designated members of Kamehameha Schools' from learning the true identities of Families A and B, the court ORDERS the parties to meet and confer about a protective order that would allow not only Kamehameha Schools' counsel of record, but also specifically identified officials of Kamehameha Schools, to receive the true names of Families A and B. As with the anticipated protective order for I.P. and B.P. (which the parties might sensibly conclude should be the same protective order for Families A and B), the parties are ORDERED to file a joint status update, within fifteen days of this order, on the progress of their efforts to enter into a protective order.

Plaintiffs are ORDERED to provide the court, under seal and ex parte, the true identities of I.P., B.P., and Families A and B. Plaintiffs are FURTHER ORDERED to provide the true identities of I.P., B.P., and Families A and B to the counsel of record of Kamehameha Schools, as well as to specifically identified officials of Kamehameha Schools, once an adequate protective order is in place.

The parties are ORDERED to meet and confer about the terms of this anticipated protective order, and are FURTHER ORDERED to file a joint status update, within fifteen days of this order, on the progress of their efforts to do so.

IT IS SO ORDERED.

### CONCLUSION

 **\*16**  For the foregoing reasons, I.P. and B.P.'s motion to use their initials is GRANTED IN PART and DENIED IN PART, and Kamehameha Schools' cross-motion is DENIED.

**All Citations**

--- F.R.D. ----, 2026 WL 937289

### Footnotes

1    Blum's declaration describes the legislators as seeking to "confront [him] face to face about challenging Kamehameha's admissions policy." Dkt. No. 54-5, at PageID.563. To the extent the suggestion is that the legislators sought to "confront" Blum in a hostile or threatening way, SFFA has not offered any evidence to support that interpretation.

2    Although the vast majority of online posts in the appendix were made between September (when SFFA's website went up) and October 2025 (when the initial complaint was filed), the timestamps on the screenshots indicate that they were captured in January 2026, when I.P. and B.P. filed their motion. Accordingly, although I.P. and B.P. were not yet parties to this lawsuit when most of the postings in the appendix were made—they joined the lawsuit on December 1, 2025— they were well positioned to include any new postings from the time period between December 1, 2025 and January 2026 if they had encountered any of evidentiary value to their motion.

3    Kamehameha Schools at times appears to suggest that there is something improper or nefarious about the way in which SFFA solicited clients to bring this lawsuit. Whatever the legal merits of the lawsuit itself—a matter not at issue here —Kamehameha Schools has not offered anything to substantiate that apparent suggestion. Of course, whether any individual plaintiff recruited in such a manner will prove to have sufficient Article III standing to bring suit is a separate question, one that, like the merits of this controversy, is not presented here.

4    I.P. and B.P. also point to public online postings in which one unidentified person makes violent threats against another unidentified person who expressed support for this lawsuit. The court concludes that little can be inferred from this single interaction between unidentified individuals making public postings online.

5    The fifth did not involve "Anti-White" bias either; it was committed by a Black person against a Micronesian. *Id.*

6    To the extent Plaintiffs implicitly rely on the online comments themselves to support the suggestion that Native Hawaiians, or Hawaiʻi residents more generally, are biased against White people, that reliance is misplaced. Although Plaintiffs'

**Students for Fair Admissions v. Trustees of Estate of Bishop, --- F.R.D. ---- (2026)**

briefing repeatedly refers to the online commenters who have threatened or harassed Blum and Franklin-Murdock as "supporters" of Kamehameha Schools, the present record does not establish the actual identity of any of those online posters, let alone that any of them is actually connected to Kamehameha Schools in any way. To be sure, the record does appear to identify individuals who have expressed criticism of Blum, Franklin-Murdock, SFFA, and this lawsuit (through, for example, still shots of online videos in which they appear), but Plaintiffs have not pointed to any examples of individuals engaging in threats or online harassment in their demonstrably true identities (or whose true identities have otherwise been determined).

7    In addition to the foregoing, I.P. and B.P. contend that their associational interests in being members of SFFA would be harmed by public disclosure of their true identities. The court considers these concerns, too, but concludes that at least on the present record, any harm to their associational interests weighs only slightly on the five-factor test.

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---